O.A. HILDEBRANDT, D.V.M., Chairman Veterinary Examining Board
You request my opinion as to whether performing intravenous euthanasia upon animals constitutes the practice of veterinary medicine. You advise that this question arises because the Wisconsin Humane Society wishes to use non-licensed personnel to do the euthanasia. For the purpose of this opinion I am adopting the general definition of euthanasia as "an easy death or means of inducing one." Webster's Third New International Dictionary
(3rd ed. 1970).
Section 453.02 (b), Stats., defines the practice of veterinary medicine in these words:
 "(6) To `practice veterinary medicine' means to examine into the fact or cause of animal health, disease or physical condition, or to treat, operate, prescribe or advise for the same, or to undertake, offer, advertise. announce, or hold out in any manner to do any of said acts. for compensation, direct or indirect, or in the expectation thereof."
Wisconsin case law does not clarify or supplement this definition.
It is my opinion that the termination of the life of an animal by the indicated means does not constitute the practice of veterinary medicine. The general rule of statutory construction of the licensing statutes is set forth in 70 C.J.S., 7,Physicians and Surgeons, at p. 828:
 "Generally a statute making the practice of medicine, dentistry, or optometry without a license or certificate an offense is to be strictly construed, although not so as to defeat the obvious legislative intent." *Page 232 
Section 453.02 (6), Stats., states that, "To . . . examine into the fact or cause of animal health, disease or physical condition, or to treat, operate, prescribe or advise for the same . . . ." is the practice of veterinary medicine. This definition is virtually the same as the definition of "treat the sick" appearing in sec. 445.01 (a), R.S. 1973. With reference to this definition of "treat the sick," (previously in sec. 445.02, Stats.), a former attorney general discussed whether a licensed osteopath could vaccinate a person against smallpox:
 "It is doubtful whether vaccination falls within this definition, since it does not require that a diagnosis be made nor is the patient sick and in need of treatment." 29 OAG 148 (1940).
Where the intent is to terminate the life of the animal there is no need to examine into the health of the animal or treat the animal in the sense set forth by sec. 453.02 (6), Stats. Where the purpose is to extinguish life, it matters little whether a person is qualified to practice veterinary medicine as long as the life of the animal is extinguished in a humane manner.
No statute sets forth exactly how the life of an animal is to be terminated. The act must, however, comply with the provisions of ch. 948, Stats., which prohibits cruelty to animals. Section948.06 of that chapter provides:
 "No person may expose any domestic animal owned by another to any known poisonous substance or controlled substance listed in s. 161.14, whether mixed with meat or other food or not, so that the substance is liable to be eaten by the animal and for the purpose of harming the animal. This section shall not apply to poison used on one's own premises and designed for the purpose of rodent or pest extermination nor to the use of a controlled substance in bona fide experiments carried on for scientific research or in accepted veterinary practices."
The section applies to poisons left to be eaten by animals and does not restrict their use in methods other than through ingestion. The use of poisons in intravenous euthanasia is governed by the general statute pertaining to mistreatment of animals, sec. 948.02, Stats., which provides: *Page 233 
 "No person may treat any animal, whether belonging to himself or another, in a cruel manner. This section does not prohibit bona fide experiments carried on for scientific research or normal and accepted veterinary practices."
There is no reason to presume that a lay employe of a humane society, properly trained in administering intravenous euthanasia, will do so in a cruel manner.
I conclude based upon the above discussion that ch. 455, Stats., does not preclude lay persons from the performance of intravenous euthanasia upon animals.
This opinion does not, of course, deal with the legality of lay persons administering drugs subject to the U.S. Controlled Substances Act of 1970 or ch. 161, Stats. (Uniform Controlled Substances Act). You have not requested this advice since such question is properly addressed to the agencies charged with enforcement of such laws.
BCL:DJH:WMS