Rudolph TAHTINEN, Plaintiff-Appellant,

v.

MSI INSURANCE COMPANY, a corporation,
Defendant-Respondent-Petitioner.

Supreme Court

*No. 83–954.  Argued October 29, 1984.—*
*Decided January 31, 1985.*

(Also reported in 361 N.W.2d 673.)

For the defendant-respondent-petitioner there were briefs by *Steven J. Ledin, David M. Weiby* and *Davis, Witkin, Weiby, Maki & Durst, S.C.*, Superior, and oral argument by *Mr. Ledin.*

For the plaintiff-appellant there was a brief by *Daniel D. Hannula* and *Ashley & Hannula,* Superior, and oral argument by *Daniel D. Hannula.*

Amicus curiae briefs were filed by *Steven J. Caulum, Thomas A. Lockyear* and *Bell, Metzner & Gierhart, S.C.*, Madison, for the Wisconsin Insurance Alliance; and, by *William C. Gleisner III, David L. Nichols* and *Weiss, Steuer, Berzowski, Brady & Donahue,* Milwaukee, for the Wisconsin Academy of Trial Lawyers.

WILLIAM A. BABLITCH, J. MSI Insurance Company seeks review of a decision of the court of appeals which held that an insurer is required to stack[1] coverage from each policy of uninsured motorist coverage it issues to the same insured even though each of the

---

[1] The term "stacking" as used in the insurance industry has been defined as follows:

"Stacking is just another word to denote the availability of more than one policy in the reimbursement of the losses of the insured. The second insurer's liability does not arise until the policy limits of the first are exhausted; nor does the third's arise until the combined limits of the first and second carriers are exhausted. There is no prorating between insurers." P. Pretzel, *Uninsured Motorists,* sec. 25.5(B) p. 88 (1972).

The term stacking is also used when the same insurer issues multiple policies and the insured seeks to aggregate the coverage from each of the policies.

policies contains a reducing clause[2] prohibiting stacking of coverage. We hold that the court of appeals correctly determined that the Wisconsin stacking statute is unambiguous. This statute voids reducing clauses which prohibit stacking of multiple policy coverages issued by the same insurer to the same insured. We therefore affirm the decision of the court of appeals.

This action arises out of an automobile-pedestrian accident which occurred on March 21, 1981. Rudolph Tahtinen was struck by an uninsured motorist while assisting the driver of a disabled car, parked on the shoulder of the road. At the time of the accident, Tahtinen was insured under three separate automobile insurance policies issued by MSI Insurance Company. Each of the policies provided uninsured motorist benefits of $15,000 per person and medical pay benefits of $3,000 per person. Each required payment of separate additional premiums for these benefits.

---

[2] "Insurance policies almost always contain provisions attempting to limit or eliminate coverage under the policy in the event the insured has other insurance available. There are three basic types of such other insurance clauses: a pro rata clause, which limits the insurer's liability to its pro rata share of the loss; an excess clause, which provides that the policy is excess over other available insurance; and an escape clause, which provides indemnity only in the event that other insurance is unavailable. Those clauses have been subjected to numerous variations, and, in fact, many policies contain elements of all three. (Footnotes omitted.)

"1 Note that insurance companies have used a special type of other insurance clause with regard to uninsured motorist coverage, and some other special types of insurance, that should not be viewed simply as a pro rata clause. Although providing for pro rata coverage, the clause, in an effort to prevent the insured from 'stacking' benefits, also provides that recovery is limited to the amount of coverage afforded by the policy with the highest limits. Under a true pro rata clause, the insured's recovery is limited only by the combined limits of the policies." A. Windt, *Insurance Claims and Disputes* 298–99 (1982).

Tahtinen alleged that his damages exceeded the uninsured motorist limit of all three policies combined. He made a claim for benefits under all three policies in order to receive the fullest compensation for his injuries. MSI Insurance Company paid Tahtinen a total of $16,500, which represented compensation for uninsured motorist benefits and medical pay benefits from the policy which had insured the automobile Tahtinen had been driving immediately prior to the accident. MSI Insurance Company refused to pay benefits under either of the two remaining policies. It maintained that its liability was limited to the policy limit of one policy because stacking of coverage was prohibited by the following policy provision contained in each of the insurance policies:

"3. Other Automobile Insurance in the Company: With respect to any occurrence, accident, or loss to which this and any other automobile insurance policy issued to the named insured by the Company also applies, the total limit of the Company's liability under all such policies shall not exceed the highest applicable limit of liability under any one such policy."

Tahtinen brought suit alleging that MSI Insurance Company's refusal to pay benefits under the other two policies constituted both bad faith and breach of contract. In its answer, MSI Insurance Company asserted that the "other automobile insurance in the company" reducing clause contained in each of the policies constituted an affirmative defense against Tahtinen's allegations. MSI Insurance Company subsequently moved the circuit court for summary judgment on the stacking issue. Judge Douglas S. Moodie granted the summary judgment and dismissed Tahtinen's complaint. Judge Moodie held that Wisconsin's stacking statute, sec. 631.-43(1), Stats., only applies where the insured holds several insurance policies issued by different companies,

but does not apply where the insured holds several insurance policies issued by the same insurance company.

Tahtinen appealed this decision to the court of appeals which reversed. The court of appeals held that sec. 631.43(1), Stats., voids reducing clauses included to prevent stacking of uninsured motorist benefits regardless of how many insurers are involved and does not exclude situations involving two or more policies issued by a single insurer. *Tahtinen v. MSI Ins. Co.*, 118 Wis. 2d 389, 392, 347 N.W.2d 617 (Ct. App. 1984). MSI Insurance Company subsequently filed a petition for review which was granted by this court.

The sole issue for review is whether an insurance company which issues two or more insurance policies to the same insured may include a policy provision prohibiting stacking of uninsured motorist benefits against the same insurer? We hold that an insurance policy provision which prohibits stacking of uninsured motorist benefits against the same insurer is prohibited by sec. 631.43(1), Stats. This statute is unambiguous and voids reducing clauses which attempt to prevent stacking of uninsured motorist benefits.

The issue of stacking uninsured motorist coverage was first raised in *Leatherman v. American Family Mut. Ins. Co.*, 52 Wis. 2d 644, 190 N.W.2d 904 (1971), at a time when uninsured motorist coverage was not required by statute. Leatherman was a passenger in an automobile which was involved in an accident with an uninsured motorist. The host driver's carrier paid Leatherman up to its policy limit for uninsured motorist coverage. Leatherman's own insurer refused to provide him with additional benefits under his uninsured motorist coverage because the policy contained a reducing clause. We found that the reducing clause was neither ambiguous nor contrary to public policy. *Id.* at 649–50. We con-

cluded that only the legislature could prohibit the use of reducing clauses, not the court. *Id.* at 650–51.

Subsequently, uninsured motorist coverage became mandatory, and the same issue raised in *Leatherman* was again presented in *Scherr v. Drobac,* 53 Wis. 2d 308, 193 N.W.2d 14 (1972). This court determined that the uninsured motorist statute, sec. 204.30 (5) (a), Stats. (1973) (predecessor to sec. 632.32), had no effect on the validity of the reducing clause contained in the uninsured motorist coverage. *Id.* at 310–11.

Similarly, in *Nelson v. Employers Mut. Casualty Co.,* 63 Wis. 2d 558, 217 N.W.2d 670 (1974), this court upheld the validity of a reducing clause and denied the plaintiff the right to stack coverages of two uninsured motorist policies. We found the *Leatherman* and *Scherr* decisions were controlling, and that the uninsured motorist statute only guaranteed recovery of the minimum amount of coverage afforded for each policy and not the maximum coverage afforded by stacking several policies. *Nelson* at 568–69.

These cases clearly demonstrated this court's refusal to prohibit reducing clauses and extend the stacking doctrine without a clear legislative mandate: "any prohibition of reducing clauses was to be made by legislative mandate and not judicial fiat." *Landvatter v. Globe Security Ins. Co.,* 100 Wis. 2d 21, 23, 300 N.W.2d 875 (Ct. App. 1980). Subsequently, the legislature enacted sec. 631.43(1), Stats, which the court of appeals in *Landvatter* found provided "the legislative mandate which was missing at the time the *Leatherman, Scherr* and *Nelson* cases considered the public policy considerations governing reducing clauses." *Id.* at 26.

The issue before the *Landvatter* court was whether sec. 631.42(1), Stats., made invalid the reducing clause contained in the uninsured motorist section of the plaintiff's automobile insurance policy. *Landvatter* at 22.

The clause reduced the amount the plaintiff received under her uninsured motorist coverage by the amount of payments she had received under another insurer's policy of uninsured motorist coverage. The court of appeals held that the reducing clause was invalid: "sec. 631.43(1) must be read together with sec. 632.32(3) to permit the stacking of uninsured motorist insurance coverages." *Id.* at 26. Section 632.32(3) is cited in full below.[3]

These cases clearly demonstrate that the validity of reducing clauses in uninsured motorist coverage is controlled by legislative mandate, not by public policy considerations. Therefore, the issue before this court involves the proper construction of sec. 631.43(1), Stats., which provides:

"**631.43 Other insurance provisions.** (1) GENERAL. When 2 or more policies promise to indemnify an insured against the same loss, no 'other insurance' provisions of the policy may reduce the aggregate protection of the insured below the lesser of the actual insured loss suffered by the insured or the total indemnification promised by the policies if there were no 'other insurance' provisions. The policies may by their terms define the extent to which each is primary and each excess, but if the policies contain inconsistent terms on that point, the insurers shall be jointly and severally liable to the insured on any coverage where the terms are inconsistent, each to the full amount of coverage it provided. Settlement among the insurers shall not alter any rights of the insured."

---

[3] "REQUIRED PROVISIONS. Except as provided in sub. (5), every policy subject to this section issued to an owner shall provide that:

"(a) Coverage provided to the named insured applies in the same manner and under the same provisions to any person using any motor vehicle described in the policy when the use is for purposes and in the manner described in the policy.

"(b) Coverage extends to any person legally responsible for the use of the motor vehicle."

Specifically we must decide whether sec. 631.43(1) prohibits insurance companies that issue multiple policies of uninsured motorist coverage to a single insured from including "other insurance in the company" reducing clauses in order to prohibit stacking of coverages.

Petitioner MSI Insurance Company argues that sec. 631.43(1), Stats., only applies to situations involving more than one insurer and does not apply to a single insurer's "other insurance in the company" policy provision. The petitioner points to the second and third sentences of sec. 631.43(1) which deal exclusively with multiple insurer situations to support its position. The second sentence provides that if separate insurance policies are inconsistent as to which is primary and which is excess coverage, the insurers will be jointly and severally liable to the insured. The third sentence of sec. 631.43(1) deals with "Settlement among the insurers. . . ." Thus, according to the petitioner, reading the statute as a whole leads to the conclusion that the statute only prohibits "other insurance" reducing clauses which allow an insurer to reduce its payments by the amount paid on the same claim by another insurer. Any other reading, the petitioner argues, requires that the individual sentences of sec. 631.43(1) be read and construed separately.

The plaintiff-appellant, Tahtinen, argues that sec. 631.43(1), Stats., is unambiguous in its prohibition of "other insurance in the company" reducing clauses. Tahtinen asserts that the first sentence of sec. 631.43(1) clearly declares that no "other insurance" provisions in any policy may reduce an insured's coverage. The second and third sentences, according to Tahtinen, protect the insured from being caught in the middle while two or more insurers dispute which policy is primary and which is excess by providing that either or all companies would be jointly liable in such situations. Thus, Tahtinen concludes, the second and third sentences of sec. 631.43(1)

create rules of applicability between the policies of two or more insurers and do not qualify or limit the first sentence's general prohibition against reducing clauses.

The circuit court agreed with MSI Insurance Company's construction of sec. 631.43(1), Stats. The court of appeals reversed, finding that Tahtinen's construction of the statute was the correct one. The construction of a statute in relation to a given set of facts is a question of law. *State v. Clausen,* 105 Wis. 2d 231, 243, 313 N.W.2d 819 (1982). Therefore, we need not give special deference to the determinations of the circuit court. *LePoidevin v. Wilson,* 111 Wis. 2d 116, 121, 330 N.W.2d 555 (1983).

We employ a number of well settled rules of statutory construction which must guide our analysis of sec. 631.-43(1), Stats. First and foremost is the rule that our purpose is to ascertain and give effect to the intent of the legislature. *Ball v. District No. 4, Area Board,* 117 Wis. 2d 529, 537–38, 345 N.W.2d 389 (1984). Our first resort in determining the legislative intent is to the language of the statute itself. *Id.* at 538. If the meaning of the statute is clear and unambiguous on its face, it is improper to employ extrinsic aids to determine the meaning intended. *Standard Theatres v. Transportation Dept.,* 118 Wis. 2d 730, 740, 349 N.W.2d 661 (1984); *Wis. Elec. Power Co. v. Public Service Comm.,* 110 Wis. 2d 530, 534, 329 N.W.2d 178 (1983). Conversely, if the language of the statute is ambiguous or unclear, the court will examine the scope, history, context, subject matter, and object of the statute in order to ascertain the intent of the legislature. *Ball* at 538.

Thus, the threshold question we must address before construing sec. 631.43(1), Stats., is whether the statute is ambiguous. *Standard Theatres* at 740; *State v. Engler,* 80 Wis. 2d 402, 406, 259 N.W.2d 97 (1977). A statute

is ambiguous if it is capable of being construed in two different ways by reasonably well-informed persons. *Kollasch v. Adamany,* 104 Wis. 2d 552, 561, 313 N.W.2d 47 (1981). However, we have recognized that parties have obviously disagreed as to a statute's meaning whenever a case involving statutory construction reaches this court. *State v. Wittrock,* 119 Wis. 2d 664, 670, 350 N.W.2d 647 (1984) ; *Aero Auto Parts, Inc. v. Dept. of Transp.,* 78 Wis. 2d 235, 238–39, 253 N.W.2d 896 (1977). Therefore, the court must examine the language of the statute itself to determine whether well-informed persons should have become confused. *Wittrock* at 670; *Aero Auto Parts, Inc.* at 238–39. When the language of the statute is clear and unambiguous, the statute must be interpreted on the basis of the plain meaning of its terms. *Wittrock* at 670; *State v. Derenne,* 102 Wis. 2d 38, 45, 306 N.W.2d 12 (1981). We conclude that sec. 631.43(1) is clear and unambiguous on its face; the legislative intent may be clearly discerned from the plain meaning of the statute's terms.

When we look to the plain meaning of sec. 631.43(1), Stats., we find that the legislative intent is clearly and unambiguously set forth in the first sentence of the statute. This sentence provides:

"When 2 or more policies promise to indemnify an insured against the same loss, no 'other insurance' provisions of the policy may reduce the aggregate protection of the insured below the lesser of the actual insured loss suffered by the insured or the total indemnification promised by the policies if there were no 'other insurance' provisions."

This sentence clearly refers to *policies,* without limitation or qualification, not to *companies.* We agree with the court of appeals that the common and accepted meaning of the term "policies" is more than one policy, regardless of whether the same or different insurers have issued them. *Tahtinen* at 392. Thus, the legislative

intent to invalidate reducing clauses is clearly manifest through the plain language of this sentence, irrespective of whether the policies are issued by the same or different insurance companies.

The second and third sentences of the statute, which refer to insurers, are administrative in nature and do not qualify or limit the first sentence's prohibition against reducing clauses in all policies. These sentences simply address the circumstance where the insured has coverage with more than one insurer and the coverages are in conflict as to which is primary and which is excess. In that situation, sec. 631.43(1), Stats., expands the insured's protection by holding each of the insurers jointly and severally liable to the full amount of coverage each provided.

Thus, the second and third sentences are administrative provisions which clarify the rules of applicability between two or more insurers. They do not limit or qualify the first sentence's general prohibition against "other insurance" reducing clauses. These rules of applicability do not apply to the single insurer which issues multiple policies. Where there is only one insurer, the first sentence of sec. 631.43(1), Stats., clearly and unambiguously defines the rights and liabilities of the insurer and insured vis-a-vis "other insurance" reducing clauses. No further legislative pronouncement was necessary to allow the stacking of uninsured motorist policies issued by one company. The legislature had no need to provide comparable rules of applicability for single insurers which issue multiple policies to a single insured because no possibility existed that the insured would be caught in the middle while the company determined whether and to what degree it was liable to the insured.

We find that the language of sec. 631.43(1), Stats., clearly and unambiguously indicates the legislature's intention to prohibit "other insurance in the company"

reducing clauses. Thus, it is not necessary to employ extrinsic aids. We further find that the court of appeals in *Landvatter* correctly held that sec. 631.43(1) is applicable to uninsured motorist coverage. *Landvatter* at 25–26. We therefore conclude that a proper construction of sec. 631.43(1) coupled with the *Landvatter* decision mandates a holding that MSI Insurance Company's "other insurance in the company" reducing clause is unenforceable.

*By the Court.*—The decision of the court of appeals is affirmed.

STEINMETZ, J. (dissenting). The majority holds that stacking of uninsured motorist coverage is not only permissible but required by sec. 631.43(1), Stats. The court rules that the section of the statute is clear and unambiguous and that it reflects the legislature's intention to prohibit "other insurance in the company" reducing clauses. The sentence that is allegedly clear is the first sentence of sec. 631.43(1) and reads:

"When 2 or more policies promise to indemnify an insured against the same loss, no 'other insurance' provisions of the policy may reduce the aggregate protection of the insured below the lesser of the actual insured loss suffered by the insured or the total indemnification promised by the policies if there were no 'other insurance' provisions."

This is hardly a clear and unambiguous statement. In addition, the statutory sentence as interpreted by the majority ignores a following subsection 631.43(3), Stats., which states: "Subsection (1) does not affect the rights of insurers to exclude coverages under s. 632.32(5)(b) and (c)." The reference to 632.32(5) requires consideration of sec. 632.32(5)(a) [1] which allows for limiting cov-

---

[1] Section 632.32(5)(a), Stats., provides:

"(5) PERMISSIBLE PROVISIONS. (a) A policy may limit coverage to use that is with the permission of the named insured

erage that is done with the permission of the named insured.

An insured may waive the statutory requirement that an automobile policy include uninsured motorist coverage. Consistent with that legislative policy, sec. 632.32 (5)(e)[2] provides for exclusions not prohibited by subsec. (6) of the same statute. Subsection (6) does not prohibit a drive other car exclusion for uninsured motorist coverage and *Vidmar v. American Family Mut. Ins. Co.,* 104 Wis. 2d 360, 369, 312 N.W.2d 129 (1981) approves such exclusion if clearly written so that the insured is on notice of the limitation.

What the majority holds is a clear and unambiguous statement of policy in sec. 631.43(1), Stats., is really a confusing statement and by ignoring other provisions of sec. 632.32 has declared public policy by judicial fiat to be that "stacking" of uninsured motorist coverage of multiple policies with the same insurance company is required.

I dissent from the court's setting public policy and establishing the law of uninsured motorist by interpreting a part of the statute while ignoring other provisions. The public policy established is not unfair, but it should be established by the legislature. Until now the rates for uninsured motorist coverage have been very low recognizing the limit of exposure to cover the risks of the individual policy. That will now have to change to some

---

or, if the insured is an individal, to use that is with the permission of the named insured or an adult member of that insured's household other than a chauffeur or domestic servant. The permission is effective even if it violates s. 343.45(2) and even if the use is not authorized by law."

[2] Section 632.32(5)(e), Stats., provides:

"(e) A policy may provide for exclusions not prohibited by sub. (6) or other applicable law. Such exclusions are effective even if incidentally to their main purpose they exclude persons, uses or coverages that could not be directly excluded under sub. (6)(b)."

degree so that all insureds will share the risk of stacking to compensate for the acts of those persons in society who do not recognize or honor their civic, if not legal, duty to carry liability insurance on their vehicles. This problem should be considered and dealt with by the legislature.

Uninsured motorist coverage is a creature of the legislature as a substitute for mandatory automobile insurance in this state and its development should be determined exclusively by the legislature. The majority places its desired meaning on a statutory provision which is hardly clear and unambiguous. This meaning may be in conformity with the development of the uninsured motorist coverage law in other states which allow stacking. However, in those states. there is mandatory automobile liability insurance, contrary to Wisconsin, so that the risk of being injured by an uninsured motorist is slight and stacking therefore is of no great exposure for insurers.