FRED A. RISSER, Chairperson Senate Organization Committee
Section 453.05, Stats., provides that, with certain exceptions, it is an offense for any person to practice veterinary medicine in Wisconsin without a license to do so. You have requested my opinion regarding one of the exceptions to this licensing requirement which is found at section 453.05(2)(a). It states as follows:
 (2) No veterinary license or temporary permit is required for the following activities or persons:
 (a) Artificial insemination, or for continuing the practice of pregnancy examinations of animals when such practice was engaged in prior to February 11, 1968.
The letter accompanying your request states:
 It is clear from this section that if an individual engaged in artificial insemination prior to February 11, 1968, the individual would not have to have a license to practice veterinary medicine to continue that practice after that date. Likewise, it is equally clear that if a party engaged in the practice of pregnancy examinations prior to February 11, 1968 that individual would be allowed to continue to conduct pregnancy examinations of animals after that date.
Unfortunately, it does not immediately become clear from the language of the statute whether the grandfather clause is applicable to an unlicensed individual who engaged in either artificial insemination or pregnancy examination of animals prior to February 11, 1968, and then engaged in the other practice after *Page 237 
that date. Because the statute can reasonably be interpreted in more than one way, the proper way to resolve the ambiguity is to look at both extrinsic and intrinsic aids. Tahtinen v. MSI Ins.Co., 122 Wis.2d 158, 166, 361 N.W.2d 673 (1985). Such an analysis would look to both the legislative intent as well as principles of statutory construction.
Generally a statute making the practice of medicine without a license an offense is to be strictly construed, although not so as to defeat the obvious legislative intent. 65 Op. Att'y Gen. 231 (1976). Prior to 1968, no licensure was required for either artificial insemination or pregnancy examinations. The original 1967 Assembly Bill 888 required that all technicians be licensed for artificial insemination and pregnancy examinations. Through subsequent amendments, however, the Legislature seemed to abandon that proposal. One such amendment was proposed by the original drafter of the bill, Assemblyman Nuttelman. Assembly Substitute Amendment 1 to 1967 A.B. 888 was the first to separate the two activities so that artificial insemination became included in a list of other activities that did not require licensure. The amendment kept the practice of pregnancy examinations as an entirely distinct section requiring annual licensing. Likewise, the drafting request to Assembly Substitute Amendment 2 to 1967 A.B. 888, Legislative Reference Bureau 7297, proposed by Representative Azim illustrated legislative intent when it requested a grandfather clause for persons engaged in pregnancy examinations. Representative Azim's substitute amendment itself also kept the two activities in separate categories similar to the Nuttelman amendment proposed two days earlier.
While intrinsic aids alone are not controlling in an analysis of this type, they can be useful to support a prior determination of legislative intent. Section 453.05(2)(a) contains some grammatical indicators that also support a finding that the activity of artificial insemination does not require licensure. The first indicator is the well-placed comma separating the words "artificial insemination" from the rest of the passage containing the grandfather clause. *Page 238 
This comma holds particular significance here because "[w]hen punctuation discloses a proper legislative intent or conveys a clear meaning the courts should give weight to it as evidence." 2A Singer, Sutherland Statutory Construction § 47.15 (Sands 4th ed. 1984). The position of the comma in this instance only supports the Legislature's intent that artificial insemination should be a separate and distinct activity exempt from the licensure requirements, whereas the practice of pregnancy examinations will only be exempt from licensing when the grandfather clause applies.
The next indicator is the word "or" that was placed between the two clauses. The word "or" should normally be read in its disjunctive sense, unless to do so would cause an absurd interpretation. Menominee River B. Co. v. Augustus Spies L. C.Co., 147 Wis. 559, 569, 132 N.W. 1118 (1911). Since the word "or" was placed between the two activities and not the word "and," it should be interpreted to support the Legislature's intent that the grandfather clause should only apply to the practice of pregnancy examinations and that artificial insemination technicians need no license at all.
A further grammatical indicator is the use of the words "continuing the practice of pregnancy examinations when such practice was engaged in prior to February 11, 1968." The word "practice" is used both times in its singular form. Although section 990.001(1) indicates that the use of a word in its singular form does not necessarily preclude its possibly being intended to mean the plural, such an interpretation must remain consistent with the manifest intent of the Legislature. Further, it is only logical that the grandfather clause applies to pregnancy examinations exclusively because the words "continuing the practice" relates directly back to engaging in the practice prior to February 11, 1968. For all of the reasons stated above, it appears that the Legislature's intent was to apply the grandfather clause only to pregnancy examinations. *Page 239 
Finally, it is my understanding that it has been the practice of the Veterinary Examining Board not to require a license for anyone practicing artificial insemination of animals. It is well settled that an agency's interpretation of a statute within its expertise is entitled to great weight. Milwaukee v. WERC,71 Wis.2d 709, 714-15, 239 N.W.2d 63 (1976).
Thus, the legislative history and administrative interpretation of this section indicates that the intent of the Legislature was not to require any licensure for artificial insemination but that those engaged in the practice of pregnancy examinations should be annually licensed. In order to accommodate those who had already begun the practice of pregnancy examinations before its enactment, the statute included a grandfather clause to allow those practitioners to continue that activity without the need for a license. The grammatical indicators support the conclusion that the two activities are separate and distinct.
Therefore, in answer to your question, it is my opinion that a person who had engaged in the practice of pregnancy examinations prior to February 11, 1968, would be entitled to engage in the activity of artificial insemination because licensing for that activity is not required. In all instances, however, any person who wishes to perform pregnancy examinations but had not begun to do so prior to February 11, 1968, is required to be annually licensed regardless of whether or not such person had begun the activity of artificial insemination prior to the enactment of the statute.
DJH:PJC
 *Page 1