State of Wisconsin DEPARTMENT OF NATURAL RESOURCES, Plaintiff-Appellant,

v.

CITY OF WAUKESHA, a municipal corporation, and d/b/a Waukesha Water Utility, Defendant-Respondent.

Supreme Court

*No. 92–2530. Oral argument March 30, 1994.—Decided June 1, 1994.*

(Also reported in 515 N.W.2d 888.)

181

For the plaintiff-appellant the cause was argued by *Cynthia R. Hirsch,* assistant attorney general, with whom on the brief were *Lisa Levin,* assistant attorney general and *James E. Doyle,* attorney general.

For the defendant-respondent there was a brief by *Curt R. Meitz,* Waukesha and *Harold H. Fuhrman* and *Harold H. Fuhrman & Assoc.,* of counsel, Milwaukee and oral argument by *Curt R. Meitz.*

Amicus curiae brief was filed by *Claire Silverman,* assistant legal counsel, Madison for the League of Wisconsin Municipalities.

STEINMETZ, J. This appeal presents three related issues for review:

1) Does sec. 893.80(1), Stats.,[1] the notice of claim statute, apply in all actions or only in tort actions?

---

[1] Section 893.80(1), Stats., provides as follows:

**893.80 Claims against governmental bodies or officers, agents or employes; notice of injury; limitation of damages and suits. (1)** Except as provided in subs. (1m) and (1p), no action may be brought or maintained against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or agency thereof nor against any officer, official, agent or employe of the corporation, subdivision or agency for acts done in their official capacity or in the course of their agency or employment upon a claim or cause of action unless:

2) Must the state of Wisconsin comply with the notice of claim statute when bringing a claim against a governmental body?

3) If the notice of claim statute does apply in all actions and if the state must comply with the notice of claim statute, did the state substantially comply with the statute in this case?

We hold that the notice of claim statute, sec. 893.80(1), Stats., applies in all actions, not just in tort actions. We also hold that the state must comply with the provisions of the notice of claim statute. However, in this case, the state did substantially comply with the statute. Therefore, we find that the circuit court erred

---

(a) Within 120 days after the happening of the event giving rise to the claim, written notice of the circumstances of the claim signed by the party, agent or attorney is served on the volunteer fire company, political corporation, governmental subdivision or agency and on the officer, official, agent or employe under s. 801.11. Failure to give the requisite notice shall not bar action on the claim if the fire company, corporation, subdivision or agency had actual notice of the claim and the claimant shows to the satisfaction of the court that the delay or failure to give the requisite notice has not been prejudicial to the defendant fire company, corporation, subdivision or agency or to the defendant officer, official, agent or employe; and

(b) A claim containing the address of the claimant and an itemized statement of the relief sought is presented to the appropriate clerk or person who performs the duties of a clerk or secretary for the defendant fire company, corporation, subdivision or agency and the claim is disallowed. Failure of the appropriate body to disallow within 120 days after presentation is a disallowance. Notice of disallowance shall be served on the claimant by registered or certified mail and the receipt therefor, signed by the claimant, or the returned registered letter, shall be proof of service. No action on a claim against any defendant fire company, corporation, subdivision or agency nor against any defendant officer, official, agent or employe, may be brought after 6 months from the date of service of the notice, and the notice shall contain a statement to that effect.

when it dismissed the state's action. Accordingly, we reverse the orders and judgment of the circuit court.

The relevant facts in this case are undisputed. On June 10, 1987, the Department of Natural Resources (DNR) issued a "notice of violation," advising the city of Waukesha (the city or Waukesha) that its municipal drinking water supply contained more than twice the level of radium permitted under Wis. Admin. Code sec. NR 109.50(1).[2] At the DNR's request, representatives of the DNR and the city met on June 30, 1987, to discuss the contamination of the city's drinking water. As a result of this enforcement conference, the two parties entered into a compliance agreement on September 4, 1987. This agreement provided details on the time frame and methods for Waukesha to use to achieve compliance with the state's safe drinking water standards.

The city did not comply with the terms of the agreement immediately. Rather, it attempted, unsuccessfully, to renegotiate the compliance agreement. The city claimed that the radium level in its water supply would comply with the new standard for radium contemplated by the Environmental Protection Agency (EPA).[3] Therefore, according to the city, it did not need to comply with the state's standard. The DNR responded that the state does not have to follow the EPA's changes. In fact, the DNR noted that the state

[2] The DNR alleged that Waukesha's water distribution system contained 10.6 picocuries per liter ("pCi/1") of radium. Wisconsin Administrative Code sec. NR 109.50(1) permits only five pCi/1 of radium.

Wisconsin Administrative Code ch. NR 109 was renumbered as Wis. Admin. Code ch. NR 809 in July, 1993.

[3] The EPA eventually proposed raising the acceptable level of radium to 20 pCi/1. *See* 56 Fed. Reg. 33050 at 33125 (1991).

has the authority to enforce tougher standards than the EPA, and, in this instance, the DNR was unlikely to advocate relaxing the five pCi/1 standard for radium. Hence, the DNR would not renegotiate the compliance agreement based on the new drinking water standards contemplated by the EPA.

When it appeared that the city was violating the terms of the compliance agreement, the DNR notified the mayor of Waukesha by letter dated April 25, 1990, that it was referring the matter to the Wisconsin Department of Justice (DOJ) for further action. On January 11, 1991, the DOJ sent a letter to the Waukesha city attorneys proposing a settlement agreement. The letter contained a new compliance schedule and proposed forfeitures, including $500 per day in liquidated damages for each day that the city violated the new agreement and $20,000 for the city's violations of the radium standard over the past five years. The DOJ warned the city that it would bring a lawsuit if the two parties could not work out a settlement.

Between January 29, 1991, and February 19, 1991, Waukesha city attorney Harold H. Fuhrman (Fuhrman) sent three letters to the DOJ. In the first letter, Fuhrman indicated that he believed that compliance with the DNR standard for radium "is in the area of legal impossibility of performance" without "massive state financial aid . . .." City engineers estimated that the cost of bringing the water supply into compliance would be $67,345,000. Fuhrman next mentioned that the city's current water supply would be in compliance with the new radium standard contemplated by the EPA. He also stated that the city would only be willing to adopt a "construction schedule for the blending or treatment of Waukesha water [if] either the EPA or the DNR supplies the Waukesha Water Utility with scien-

tific and empirical evidence proving that the radium content of its water is deleterious to human health . . .."

In the second letter, Fuhrman stated that the Water Commission of the city of Waukesha requested "[t]hat the State of Wisconsin support the staff recommendation of the EPA . . . and . . . [e]xercise forbearance in regard to any legal action . . . until after the EPA publishes its proposed new [standard for radium]." Finally, in the third letter, Fuhrman indicated that after talking to the mayor of Waukesha, he concluded that it would be legally impossible for Waukesha to comply with the DNR radium standard due to the constitutional debt limit of the city.

The DOJ wrote back on February 27, 1991, advising the city "that it is highly unlikely that DNR would support changes to the current [radium] standard." The DOJ also mentioned that it would not file a lawsuit until at least "early April." Fuhrman responded to the DOJ in a letter dated March 26, 1991, asking that the DOJ postpone any legal action until after the DNR finished its pending rule-making proceeding. In the alternative, Fuhrman requested that the DOJ postpone legal action until after city attorney Curt Meitz returned from his trip to the USSR on May 1, 1991.

On April 12, 1991, the DNR filed a complaint against the city of Waukesha Water Utility (the utility) seeking: 1) an injunction requiring the city to bring its water supply system into compliance with Wis. Admin. Code sec. NR 109.50(1); 2) forfeitures pursuant to sec. 144.99, Stats.,[4] for past violations of the DNR regula-

---

[4] Section 144.99, Stats., provides as follows:

**144.99  Penalties.** Any person who violates this chapter, except ss. 144.30 to 144.426, 144.48(4)(b), 144.941 to 144.944 and 144.96 (1), or any rule promulgated or any plan approval, license or special order issued under this chapter, except under those sections, shall

tion; and 3) a penalty pursuant to sec. 165.87(2).[5] The utility moved to dismiss the complaint on two grounds—the utility does not have the legal capacity to be sued and the DNR failed to allege that it served the city with a notice of claim as required by sec. 893.80(1). The DNR amended its complaint to name the "City of

forfeit not less than $10 nor more than $5,000, for each violation. Each day of continued violation is a separate offense. While the order is suspended, stayed or enjoined, this penalty does not accrue.

[5] Section 165.87(2), Stats., provides as follows:

**(2)** Levy of penalty assessment. (a) Whenever a court imposes a fine or forfeiture for a violation of state law or for a violation of a municipal or county ordinance except for a violation of s. 101.123(2)(a) or (am) 1 or (5) or state laws or municipal or county ordinances involving nonmoving traffic violations or safety belt use violations under s. 347.48(2m), there shall be imposed in addition a penalty assessment in an amount of 22% of the fine or forfeiture imposed. If multiple offenses are involved, the penalty assessment shall be based upon the total fine or forfeiture for all offenses. When a fine or forfeiture is suspended in whole or in part, the penalty assessment shall be reduced in proportion to the suspension.

(b) If a fine or forfeiture is imposed by a court of record, after a determination by the court of the amount due, the clerk of the court shall collect and transmit such amount to the county treasurer as provided in s. 59.395(5). The county treasurer shall then make payment to the state treasurer as provided in s. 59.20(5)(b).

(c) If a fine or forfeiture is imposed by a municipal court, after a determination by the court of the amount due, the court shall collect and transmit such amount to the treasurer of the county, city, town or village, and that treasurer shall make payment to the state treasurer as provided in s. 66.12(1)(b).

(d) If any deposit of bail is made for a noncriminal offense to which this section applies, the person making the deposit shall also deposit a sufficient amount to include the assessment prescribed in this section for forfeited bail. If bail is forfeited, the amount of the assessment shall be transmitted monthly to the state treasurer under this section. If bail is returned, the assessment shall also be returned.

187

Waukesha, a municipal corporation, and d/b/a Waukesha Water Utility" as the defendant and the state of Wisconsin as the plaintiff. This left unresolved that portion of the city's motion to dismiss based on the state's alleged failure to serve a notice of claim on the city, as required by sec. 893.80(1), before initiating this lawsuit against the municipality.

Following a hearing on this motion, the circuit court for Waukesha county, the Honorable Harry G. Snyder, issued a decision and order on November 26, 1991, granting the city's motion to dismiss for failure of the state to comply with sec. 893.80(1), Stats. The court held that: 1) the notice requirements in sec. 893.80(1) do apply to environmental enforcement actions; 2) sec. 893.80(5) does not exempt the state from these notice requirements; and 3) the state did not substantially comply with sec. 893.80(1).

The state moved for reconsideration of this order.[6] In a memorandum in support of its motion for reconsideration, the state advanced a new argument. The state claimed that based on Wisconsin common law the government is not subject to the mandates of a general statute unless the statute expressly or impliedly refers to the government. According to the state, this common law rule exempts the state from the requirements of the notice of claim statute. On August 31, 1992, the circuit court for Waukesha county, the Honorable Patrick L. Snyder, issued a judgment and order denying

---

[6] While the motion for reconsideration was pending, the state filed a notice of appeal with the circuit court. The state intended to appeal the order of November 26, 1991. The circuit court never reduced this order to a judgment. The court of appeals held that the order appealed from was not final as required by sec. 808.03(1), Stats. Hence, the court of appeals dismissed the state's appeal for lack of jurisdiction.

the motion for reconsideration and dismissing the state's action.

The state appealed from the judgment and orders of the circuit court. The court of appeals certified the appeal for review by this court pursuant to sec. (Rule) 809.61, Stats. This court accepted the certification. We now reverse the orders and judgment of the circuit court.

The state initiated this lawsuit seeking injunctive relief and statutorily imposed forfeitures and penalties, but no tort damages. The circuit court dismissed the state's complaint because the state failed to present "[a] claim containing the address of the claimant and an itemized statement of the relief sought" to the appropriate representative of the city and failed to wait 120 days after the presentation before filing the complaint, as required by sec. 893.80(1), Stats., the notice of claim statute. If the notice of claim statute applies only to tort actions, then the circuit court erred in dismissing the complaint. Hence, we will first determine whether sec. 893.80(1) applies to this action to enforce an environmental regulation.

The application of a statute to a given set of facts is a question of law. *Tahtinen v. MSI Ins. Co.,* 122 Wis. 2d 158, 166, 361 N.W.2d 673 (1985). We review questions of law *de novo.* Our sole purpose in reviewing a statute is to determine the intent of the legislature. If the meaning of the statute is clear and unambiguous on its face, we need look no further to determine the legislature's intent. *Id.*

Section 331.43(1), Stats. (1963), a predecessor to sec. 893.80(1), explicitly limited application of the notice of claim requirements to tort actions brought against a governmental unit:

> No action *founded on tort* . . . shall be maintained against any . . . political corporation, governmental subdivision or agency thereof . . . unless within 120 days after the happening of the event causing the injury or damage or death complained of, written notice of the time, place and circumstances of the injury or damage signed by the party, his agent or attorney is served on such . . . political corporation, governmental subdivision or agency . . ..

(Emphasis added.) Section 893.80(1) has no such limitation:

> Except as provided in subs. (1m) and (1p), no action may be brought or maintained against any . . . political corporation, governmental subdivision or agency thereof . . . unless . . ..

The plain language of the current statute clearly does not limit the application of the notice of claim requirements to tort claims.[7]

This court found as much in *Figgs v. City of Milwaukee,* 121 Wis. 2d 44, 52, 357 N.W.2d 548 (1984), where we stated:

> It should be noted that sec. 893.80 is not a statute only applicable to tort claims or claims for negligence. The opening sentence of sec. 893.80 recites its applicability to any cause of action. Sec. 893.80, when initially enacted by the legislature, applied only to tort claims, but, by ch. 285, Laws of 1977, the procedures were made generally applicable to any claims against the listed governments.

---

[7] Section 893.80(1), Stats., explicitly exempts only two causes of action from the notice requirements—those mentioned in sub. (1m), medical malpractice actions, and those mentioned in sub. (1p), actions for the negligent inspection of property. Neither of these exceptions is relevant in this case.

As the court of appeals mentioned in its certification, that court has, on three separate occasions, concluded that sec. 893.80, Stats., only applies to actions for money damages. *See Kaiser v. City of Mauston,* 99 Wis. 2d 345, 356, 299 N.W.2d 259 (Ct. App. 1980) ("[t]his statute applies to claims for money damages. It does not apply to a claim for equitable relief"); *Harkness v. Palmyra-Eagle School Dist.,* 157 Wis. 2d 567, 579, 460 N.W.2d 769 (Ct. App. 1990) ("[w]e have found no authority indicating that it applies to equitable or injunctive relief"); *Nicolet v. Village of Fox Point,* 177 Wis. 2d 80, 86, 501 N.W.2d 842 (Ct. App. 1993) ("[t]he full legislative history clarifies that sec. 893.80 never was intended to apply to equitable actions").

In *Nicolet,* 177 Wis. 2d at 85, the court of appeals characterized this court's conclusion in *Figgs,* 121 Wis. 2d at 52, regarding the universal applicability of sec. 893.80(1), Stats., as dicta that the court need not follow. Regardless of whether our conclusion in *Figgs* was dicta, it was the correct conclusion. The language of the statute clearly and unambiguously makes the notice of claim requirements applicable to all actions. The legislature's decision to remove the language limiting the statute to tort claims reinforces this conclusion. Thus, we now hold that sec. 893.80 applies to all causes of action, not just those in tort and not just those for money damages. We therefore overrule *Kaiser, Harkness* and *Nicolet* to the extent that those opinions hold that sec. 893.80(1) applies only to tort claims and claims for money damages.

The state next argues that sec. 893.80(5), Stats.,[8] renders the notice provisions of sec. 893.80(1) inappli-

---

[8] Section 893.80(5), Stats., provides as follows:

cable to this cause of action. The relevant language of sec. 893.80(5) provides:

> When rights or remedies are provided by any other statute against any political corporation, governmental subdivision or agency . . . such statute shall apply and the [damage] limitations in sub. (3) shall be inapplicable.

The state asks this court to interpret this language to mean that when a claim is based on another statute—sec. 144.99, for example, in this case—that statute controls and all requirements of sec. 893.80 are inapplicable.

■

This interpretation ignores the plain meaning of the statute. Clearly, sec. 893.80(5), Stats., only directs that when a claim is based on another statute, the *damage limitations* of sec. 893.80(3)[9] do not apply. Sec-

---

(5) Except as provided in this subsection, the provisions and limitations of this section shall be exclusive and shall apply to all claims against a volunteer fire company organized under ch. 213, political corporation, governmental subdivision or agency or against any officer, official, agent or employe thereof for acts done in an official capacity or the course of his or her agency or employment. When rights or remedies are provided by any other statute against any political corporation, governmental subdivision or agency or any officer, official, agent or employe thereof for injury, damage or death, such statute shall apply and the limitations in sub. (3) shall be inapplicable.

[9] Section 893.80(3), Stats., provides as follows:

(3) The amount recoverable by any person for any damages, injuries or death in any action founded on tort against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or agency thereof and against their officers, officials, agents or employes for acts done in their official capacity or in the course of their agency or employment, whether proceeded against jointly or severally, shall not exceed $50,000, except that the amount recoverable shall not exceed $25,000 in any

192

tion 893.80(5) does not say that the notice provisions of sec. 893.80(1) do not apply. In this case, the state does not seek damages under 893.80(3). The state seeks only injunctive relief and forfeitures and penalties pursuant to secs. 144.99 and 165.87(2). Thus, we hold that sec. 893.80(5) is not relevant here and does not render the notice provisions of sec. 893.80(1) inapplicable to this cause of action.[10]

Having held that the notice provisions of sec. 893.80(1), Stats., do apply to this cause of action, we now determine whether the state is bound by these requirements. This inquiry also presents the court with a question of statutory interpretation which we review *de novo*. *See Tahtinen,* 122 Wis. 2d at 166. The plain language of the statute certainly does not exempt the state from the notice requirements. However, when deciding whether the provisions of a statute apply to

such action against a volunteer fire company organized under ch. 213 or its officers, officials, agents or employes. If the volunteer fire company is part of a combined fire department, the $25,000 limit still applies to actions against the volunteer fire company or its officers, officials, agents or employes. No punitive damages may be allowed or recoverable in any such action under this subsection.

[10] The state also argues that the notice provisions of sec. 893.80(1), Stats., should not apply in environmental enforcement actions because exigent circumstances present in those cases often require immediate action by a court, such as a preliminary injunction. Such immediate relief is not possible if the claimant is required to follow the notice procedures. In this case, however, the state has not sought preliminary relief. In fact, the state waited nearly four years after discovering the alleged violation before it filed a complaint in the circuit court. Hence, this issue—whether the notice requirements of sec. 893.80(1) apply in cases where the complainant seeks preliminary relief—is not before the court and we need not address it.

the state, this court has generally applied the following rule of statutory construction:

> Statutory provisions which are written in such general language that they are reasonably susceptible to being construed as applicable both to the government and to private parties are subject to a rule of construction which exempts the government from their operation in the absence of other particular indicia supporting a contrary result in particular instances.

3 Sutherland, Statutes and Statutory Construction, sec. 62.01 at 205 (5th ed. 1992); *see also State v. Milwaukee,* 145 Wis. 131, 135, 129 N.W. 1101 (1911); *State ex rel. Dept. of Pub. Instruction v. ILHR,* 68 Wis. 2d 677, 681, 229 N.W.2d 591 (1975); *Wis. Vet. Home v. Div. Nurs. Forfeit. Appeals,* 104 Wis. 2d 106, 110, 310 N.W.2d 646 (Ct. App. 1981). This court applied this rule of construction to exempt the state from an early notice of claim statute. *See Milwaukee,* 145 Wis. at 135–36. Based on the above rule, the state argues that because sec. 893.80(1) does not explicitly refer to the state, this court should hold that the state is not bound by the statute's notice requirements.

More recently, however, Wisconsin courts have followed a general trend toward relaxing the application of this rule of exclusion. In *Town of Janesville v. Rock County,* 153 Wis. 2d 538, 544, 451 N.W.2d 436 (Ct. App. 1989), the court of appeals held that the town of Janesville could enforce a statute requiring Rock county to pay fees to the town for fire protection services. The court adopted the following reasoning:

> 'The stringency of the rule should be relaxed where the demands of a contrary policy include the government within the purpose and intent of a statute. Such a policy may be reflected from one or both

194

of two sources: *First,* where the objective of a statute could not be accomplished without including the government. . . . *Second,* a contrary policy is indicated where the inclusion of a particular activity within the meaning of the statute would not vitally interfere with the processes of government.'

*Id. quoting* 3 Sands, Statutes and Statutory Construction, sec. 62.02 at 123–24 (4th ed. 1986). We now apply this analysis to the facts presented here.

In this case, we find that the objective of sec. 893.80(1), Stats., would be frustrated if the state did not have to comply with the notice requirements. "[T]he purpose of a notice-of-claim statute is to 'afford[ ] the municipality an opportunity to compromise and settle [the] claim without litigation.' " *Figgs,* 121 Wis. 2d at 53, *quoting Gutter v. Seamandel,* 103 Wis. 2d 1, 11, 308 N.W.2d 403 (1981). If the state did not have to comply with the notice requirements, a municipality would lose this opportunity to "compromise and settle [the] claim without litigation" in actions brought by the state. The legislature, by enacting notice of claim statutes, has evinced an intent to provide municipalities with an opportunity to avoid costly, time-consuming litigation. Were we to allow the state to ignore this legislative directive, we would frustrate the intent of the legislature and subject municipalities to otherwise avoidable litigation.

The state claims that sec. 893.80(1), Stats., should not be construed to include the state in this case because the DNR's enforcement process satisfies the purpose of the notice of claim statute. The state did substantially comply with the notice requirements in this particular enforcement action. *See infra.* That is not to say, however, that the DNR's enforcement procedures always comply with the statutory requirements

in such actions. Furthermore, other units of state government may not have procedures in place to forewarn a municipality that the state intends to bring a lawsuit in the future. Our holding today, that the state must comply with sec. 893.80(1), applies to all actions that are covered by the statute—not just DNR enforcement proceedings.

■

In addition, we find that requiring the state to comply with sec. 893.80(1), Stats., will not vitally interfere with the processes of state government. Certainly, when the state plans to bring an action against a municipality in the circuit court, the state must file a summons and complaint as it did in this case. Section 893.80(1), merely adds one more step to the process. The state must also present the municipality with "[a] claim containing the address of the claimant and an itemized statement of the relief sought" and then give the municipality some time to settle the matter prior to litigation. This additional burden is not likely to bring the wheels of state government to a halt. Rather, this procedure should help the state resolve disputes with municipalities without having to resort to litigation. Because we find that: 1) the objective of the notice requirements cannot be accomplished without including the state; and 2) requiring the state to comply with the procedures will not vitally interfere with the processes of government, we "relax the stringency of the rule" excluding the state from the mandates of general statutes and hold that the state must comply with sec. 893.80(1).

Finally, we must decide whether the state did in fact comply with the procedures required by sec. 893.80(1), Stats. Section 893.80(1), has two requirements. First, a claimant must present the municipality

with "written notice of the circumstances of the claim signed by the party . . .." Section 893.80(1)*(a)*. Second, the claimant must present the municipality with "[a] claim containing the address of the claimant and an itemized statement of the relief sought . . .." Section 893.80(1)*(b)*.

If a claimant does not literally comply with sec. 893.80(1)(a), the claim does not necessarily fail:

> Failure to give the requisite notice shall not bar action on the claim if the [municipality] had actual notice of the claim and the claimant shows to the satisfaction of the court that the delay or failure to give the requisite notice has not been prejudicial to the [municipality].

Section 893.80(1)(a). In this case, the city never alleged that the state failed to comply with sec. 893.80(1)(a). Clearly, after four years of negotiations, the city had actual knowledge of the claim and was not prejudiced by the state's failure to give the requisite notice.

Thus, we need only decide whether the state complied with sec. 893.80(1)(b), Stats. The underlying facts are undisputed. Hence, this inquiry presents us with a question of law concerning the interpretation of the notice of claim requirements of sec. 893.80(1)(b). *See Sambs v. Nowak,* 47 Wis. 2d 158, 164, 177 N.W.2d 144 (1970). We review questions of law *de novo. Tahtinen,* 122 Wis. 2d at 166.

To satisfy the notice of claim requirements of sec. 893.80(1)(b), Stats., a claim must: 1) identify the claimant's address; 2) contain an itemized statement of the relief sought; 3) be submitted to the city clerk; and 4) be

disallowed by the city. Two basic principles guide this court's determination of whether a notice of claim is sufficient under sec. 893.80(1)(b), Stats. First, the written claim must be definite enough to fulfill the purpose of the claim statute—to provide the municipality with the information necessary to decide whether to settle the claim. *Figgs,* 121 Wis. 2d at 54. The municipality must be furnished with sufficient information so that it can budget accordingly for either a settlement or litigation. *Van v. Town of Manitowoc Rapids,* 150 Wis. 2d 929, 933, 442 N.W.2d 557 (Ct. App. 1989). Second, notices of claim should be construed so as to preserve bona fide claims. *Figgs,* 121 Wis. 2d at 54–55. "[I]n furtherance of this policy, only substantial, and not strict, compliance with notice statutes is required." *Id.* at 55. This court will review each of the four requirements for substantial compliance.

The state contends that the letter sent by the DOJ to the Waukesha city attorneys on January 11, 1991 satisfies the requirements of sec. 893.80(1)(b). The purpose of the letter, as indicated by its second sentence, mirrors the purpose of a notice of claim: "The [DNR] is interested, if possible, in resolving the water supply compliance issues prior to initiating a lawsuit." While this statement may weigh in the state's favor, it certainly is not sufficient by itself to satisfy any one of the requirements of the notice of claim statute.

The statute first requires that a notice of claim contain the address of the claimant. In this case, the letter contains the address of the claimant's attorney, the DOJ. The attorney's address is considered the equivalent of the claimant's address for the purpose of the notice of claim statute. *See Novak v. Delavan,* 31 Wis. 2d 200, 211, 143 N.W.2d 6 (1966); *Gutter,* 103 Wis.

2d at 9. Thus, the DOJ letter satisfies the first requirement.

Second, the claim must contain an itemized statement of the relief sought. Here, the letter listed the relief sought as follows: "DNR proposes a $500 per day liquidated penalty for each day of violation of any term of the final judgment. . . . On forfeitures, DNR proposes $20,000 . . . for the past five years of radium violations."

This court has consistently held that a notice of claim must state a specific dollar amount. *See e.g. Sambs,* 47 Wis. 2d at 165. The $20,000 forfeiture satisfies this condition. And, while the penalty provision is listed as a daily fee, rather than as a specific dollar amount, this is as specific as possible given the state's intention to penalize the city if the city fails in the future to comply with the judgment agreed to by the two parties.

Earlier in the letter, the DOJ proposed a compliance schedule requiring the city to attain compliance with the DNR regulation by November 1, 1994. While the letter does not use the word "injunction," it clearly defines the equitable relief sought. In general, this list does not strictly comply with sec. 893.80(1)(b), Stats. It does, however, provide the city with enough information to decide whether to settle the claim prior to litigation. *See Figgs,* 121 Wis. 2d at 54. In order to preserve this otherwise bona fide claim, we find that this statement of the relief sought satisfies this second statutory requirement.

Third, sec. 893.80(1)(b), Stats., requires that the notice of claim be "presented to the appropriate clerk or person who performs the duties of a clerk or secretary for the defendant . . .." In this case, the DOJ presented the claim to the city attorneys. Again, the state did not

199

follow the letter of the statute. The state, however, did present the claim to a proper representative of the city. In fact, had the state presented the letter to the city clerk, the clerk would likely have forwarded the letter to the city attorneys. The city attorneys, as the parties who ultimately represent the city in settlement negotiations or in litigation, are in the best position to inform, advise and discuss the potential cause of action with the city. Here, subsequent letters sent by city attorney Fuhrman to the DOJ reveal that the city attorneys did forward all relevant information to and discuss the notice of claim with the mayor of Waukesha and the Waukesha Water Utility. Again, in order to preserve this otherwise bona fide claim, we find that the state substantially complied with the requirement of presenting the notice of claim to the appropriate party.

Finally, a claimant must wait until the municipality disallows the claim before it may commence the action in the circuit court. Section 893.80(1)(b), Stats. Failure of the municipality to disallow the claim within 120 days is considered a disallowance. *Id.* In this case, the state did not wait 120 days after sending the letter dated January 11, 1991, before filing the complaint. Therefore, if the city did not disallow the claim, then the state failed to comply with the statute.

The state claims that a series of letters sent by Fuhrman to the DOJ substantially disallowed the claim. We agree. While these letters do not expressly reject the state's claim, collectively they make it clear that the city was not interested in resolving the problems prior to litigation. In the first letter, Fuhrman stated that it likely would be legally impossible for the city to comply with the state's radium standard. He further stated that the city would only be willing to adopt a construction schedule for improving the city's

water supply if the EPA or DNR presented evidence demonstrating that the radium level in Waukesha's water supply is deleterious to human health. In a subsequent letter, Fuhrman indicated that after talking to the mayor, he concluded that the city could not legally comply with the DNR's standard for radium in the water supply due to the cost of compliance and the city's constitutional debt limit.

After receiving these two letters, along with two other letters in which Fuhrman asked the state to postpone legal action pending the outcome of EPA and DNR rulemaking proceedings, it was reasonable for the state to assume that the city had disallowed the claim. The state could have reached only one conclusion based on these letters and the city's previous refusal to follow the original compliance schedule agreed to in 1987—Waukesha did not intend to negotiate a settlement regarding its violation of Wis. Admin. Code sec. NR 109.50(1).

The city claims that Fuhrman could not have disallowed the state's claim because the city attorneys did not have the authority to disallow the claim. While this may be true, there is no reason to believe that the state knew this. When the state received the letters from Fuhrman, it assumed that he was speaking on behalf of the city. In fact, the letters clearly indicate that Fuhrman's decisions were based on his discussions with the mayor and representatives of the utility. We therefore find that the state satisfied this final requirement of the notice of claim statute by waiting until the city disallowed its claim before initiating the action in the circuit court. Hence, we hold that the state substantially complied with all four requirements of sec. 893.80(1)(b), Stats.

We hold that the notice of claim statute, sec. 893.80(1), Stats., applies in all actions, not just in tort actions. We also hold that the state must comply with the requirements of sec. 893.80(1). Finally, we hold that the state did substantially comply with the notice of claim statute in this case. Accordingly, we reverse the orders and judgment of the circuit court granting the city's motion to dismiss the state's complaint.

*By the Court.*—The judgment and orders of the Waukesha county circuit court are reversed.