ECKER BROTHERS, Plaintiff-Appellant,

v.

CALUMET COUNTY, Defendant-Respondent.†

Court of Appeals

*No. 2007AP2109. Oral argument June 1, 2009.
—Decided July 15, 2009.*

2009 WI App 112

(Also reported in 772 N.W.2d 240.)

† Petition to Review denied 11/12/09.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of and oral argument by *Joseph R. Cincotta* of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Andrew A. Jones* and *Eric J. Meier* of *Whyte Hirschboeck Dudek S.C.* of Milwaukee. There was oral argument by Andrew A. Jones.

A nonparty brief was filed by *Andrew T. Phillips* and *Gina M. Ozelie* of *Centofanti Phillips, S.C.*, of Mequon, for Wisconsin Counties Association.

Before Brown, C.J., Anderson, P.J., and Snyder, J.

¶ 1. BROWN, C.J. We read the Wisconsin statutes to say that our legislature favors alternative energy systems, such as the proposed wind energy system at issue in this case. We also read the statutes to disfavor wholesale local control which circumvents this policy. Instead, localities may restrict a wind energy system only where necessary to preserve or protect the public health or safety, or where the restriction does not significantly increase the cost of the system or significantly decrease its efficiency, or where the locality allows for an alternative system of comparable cost and efficiency. This determination must be made on a case-by-case basis where the local governing arm first hears the specifics of the particular wind system and then decides whether a restriction is warranted. But here, Calumet County promulgated an ordinance in

which it arbitrarily set minimum setback, height and noise requirements for any wind system that might want to exist in Calumet County. We hold that this "one size fits all" scheme violates the legislative idea that localities must look at each wind system on its own merits and decide, in each specific case, whether the wind system conflicts with public health or safety. We reverse and remand with directions that the circuit court strike the County's ordinance as ultra vires.

## BACKGROUND

¶ 2. The relevant facts are undisputed. The Ecker Brothers are farmers with one wind turbine on their farm. They wanted to build more wind turbines on their property to generate energy to sell back to the power company. So, they began seeking funding to do so. Part of the funding they needed was in the form of a grant, and that grant required an acknowledgement letter from Calumet County and the town of Stockbridge that the Ecker Brothers did not need a permit to build wind turbines. The town sent the letter, but the County did not. Instead, the County passed a moratorium on further wind turbines, and, eventually, it passed a wind turbine ordinance restricting all wind energy systems uniformly based on a system's classification as a large or small system. Under the new ordinance, the Ecker Brothers had to apply for a permit and their proposed wind turbines had to meet the ordinance's restrictions. So, the Ecker Brothers filed a declaratory judgment action claiming, inter alia, that the County's wind energy ordinance was ultra vires because the County exceeded its authority under WIS. STAT. § 66.0401 (2007–08).[1]

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

¶ 3. Both parties moved for summary judgment. The County argued that the Ecker Brothers' claim was barred by Wis. Stat. § 893.80 because they failed to serve the County with the proper written notice of circumstances and claim. The circuit court agreed with the County and dismissed the case. The Ecker Brothers appealed.

## DISCUSSION

¶ 4. This appeal requires us to interpret and apply Wis. Stat. § 893.80, the notice of claims statute, and Wis. Stat. §§ 66.0401 and 66.0403, the statutes governing wind energy systems. These are questions of law we review de novo. *Nischke v. Aetna Health Plans*, 2008 WI App 190, ¶ 4, 314 Wis. 2d 774, 763 N.W.2d 554, *review denied*, 2009 WI 34, 316 Wis. 2d 720, 765 N.W.2d 580 (No. 2008AP807). We also review de novo both summary judgment and the discretionary decision to deny declaratory relief when the decision is based on a question of law. *Id.*

### *Application of Wis. Stat. § 893.80,*
### *the notice of claims statute*

██

¶ 5. As a preliminary matter, because Calumet County raises it and the circuit court used it as one basis for its decision, we will address whether Wis. Stat. § 893.80, the notice of claims statute, applies here. The notice of claims statute requires parties bringing or maintaining an action against any "political corporation, governmental subdivision or agency thereof" to provide written notice of the circumstances of the claim within 120 days after the happening of the event giving rise to the claim. Sec. 893.80(1)(a). In *DNR v. City of*

*Waukesha*, 184 Wis. 2d 178, 191, 515 N.W.2d 888 (1994), our supreme court concluded that § 893.80 "applies to *all* causes of action, not just those in tort and not just those for money damages." (Emphasis added.) We agree with the County, therefore, that the statute applies to this declaratory judgment action.

¶ 6. We recognize that courts have since created exceptions to the all actions language of *City of Waukesha. See, e.g., Auchinleck v. Town of LaGrange*, 200 Wis. 2d 585, 597, 547 N.W.2d 587 (1996) (stating that the all actions language of *City of Waukesha* does not extend to open records and open meetings laws). In *Town of Burke v. City of Madison*, 225 Wis. 2d 615, 625, 593 N.W.2d 822 (Ct. App. 1999), we identified the three factors relevant to whether an action is exempt from the notice of claims statute. The factors require the court to examine whether: (1) "there is a specific statutory scheme for which the plaintiff seeks exemption"; (2) "enforcement of [WIS. STAT. § 893.80(1)], would hinder a legislative preference for a prompt resolution of the type of claim under consideration"; and (3) "the purposes for which § 893.80(1) was enacted would be furthered by requiring that a notice of claim be filed." *Town of Burke*, 225 Wis. 2d at 625 (footnotes omitted). While the Ecker Brothers argue that these exceptions apply to their case because they view our alternate energy statutes to be an exception to the notice statute, we agree with the County that the alternative energy statutes are silent regarding notice. Nor can these statutes be read to require prompt resolution such that the notice of claim statute would be a hindrance. We are convinced that the Ecker Brothers were required to provide the requisite notice to the County. Neither party disputes that the Ecker Brothers did not do so.

¶ 7. However, WIS. STAT. § 893.80(1)(a) expressly provides that "[f]ailure to give the requisite notice shall not bar action on the claim if the . . . [political] subdivision . . . had *actual notice* of the claim and the claimant shows to the satisfaction of the court that the . . . failure to give the requisite notice has not been prejudicial to the . . . [political] subdivision." (Emphasis added.)

██

¶ 8. Here, the Ecker Brothers had been in contact with the County multiple times in 2004 and 2005. The County had received letters from the Ecker Brothers prior to it enacting the ordinance, which requested a letter stating that the Ecker Brothers did not need a permit. The County also received letters from the Ecker Brothers afterwards, which stated that the Ecker Brothers thought the wind ordinance was unlawful based on WIS. STAT. § 66.0401 and the ordinance's restrictions would make wind projects impossible. At that point, the Ecker Brothers had already installed a test turbine, completed percolation tests, and requested permission to dig test holes. This constitutes actual notice. The County has not been prejudiced here, since it had notice of the Ecker Brothers' dispute well before they filed their lawsuit and, more to the point, even before they enacted the ordinance.

██ ██

¶ 9. We are cognizant of the fact that, to fall under the actual notice exception, the claimant must also meet the requirements in WIS. STAT. § 893.80(1)(b). To satisfy § 893.80(1)(b), the claim must have (1) identified the claimant's address, (2) itemized the relief sought, (3) been submitted to the proper County representative, and (4) been disallowed by the County. *See also City of Waukesha*, 184 Wis. 2d at 197–98. But, strict

compliance with these requirements is not necessary; rather substantial compliance is sufficient. *City of Waukesha*, 184 Wis. 2d at 198. The letters we referenced above included the Ecker Brothers' address and repeatedly requested that the County provide them with an acknowledgment letter. The Ecker Brothers sent letters to the county planning office, board, and corporation counsel. The County repeatedly denied their requests and even suggested that the Ecker Brothers might "want to consult with [their] own legal council (sic) on the issue [of the County's upcoming wind turbine ordinance]." This provided substantial compliance with § 893.80(1)(b). We conclude there was actual notice.

### *Scope of political subdivisions' authority to regulate wind energy systems*

██

¶ 10. Now we can get to the substantive issue, which concerns the scope of the State's delegation of authority to its political subdivisions to restrict wind energy systems.[2] WISCONSIN STAT. § 66.0401(1) is the primary statute governing this issue. This statute is a state legislative restriction that expressly forbids political subdivisions from regulating solar and wind energy systems. *State ex rel. Numrich v. City of Mequon Bd. of Zoning Appeals*, 2001 WI App 88, ¶ 17, 242 Wis. 2d 677, 626 N.W.2d 366.[3] The scope of this preemption,

---

[2] A "wind energy system" is "equipment that converts and then stores or transfers energy from the wind into usable forms of energy." WIS. STAT. § 66.0403(1)(m).

[3] *State ex rel. Numrich v. City of Mequon Board of Zoning Appeals*, 2001 WI App 88, ¶ 17, 242 Wis. 2d 677, 626 N.W.2d 366, refers to WIS. STAT. §§ 66.031 and 66.032. The legislature

however, expressly allows some local control insofar as they satisfy one of three conditions. Sec. 66.0401(1)(a)-(c). Section 66.0401(1) states in full:

(1) AUTHORITY TO RESTRICT SYSTEMS LIMITED. No county, city, town, or village may place any restriction, either directly or in effect, on the installation or use of a . . . wind energy system, as defined in s. 66.0403 (1) (m), unless the restriction satisfies one of the following conditions:

(a) Serves to preserve or protect the public health or safety.

(b) Does not significantly increase the cost of the system or significantly decrease its efficiency.

(c) Allows for an alternative system of comparable cost and efficiency.

Thus, a political subdivision's consideration of a wind energy system must be in light of the conditions placed on local regulation by this section. *Numrich*, 242 Wis. 2d 677, ¶ 17.

¶ 11. The statutory scheme also allows political subdivisions to issue "wind access permits," though they cannot require owners to apply for a wind access permit. WIS. STAT. § 66.0403; *see also Numrich*, 242 Wis. 2d 677, ¶ 14. Wind access permits are granted to wind energy systems to *benefit* and *protect* them from impermissible interferences, not to restrict them. *Numrich*, 242 Wis. 2d 677, ¶ 16. Indeed, § 66.0403(7) provides remedies to the owner of the energy system

renumbered §§ 66.031 and 66.032 to WIS. STAT. §§ 66.0401 and 66.0403, respectively, in 1999 Wis. Act 150, §§ 78 and 82. The relevant text of these statutes was not changed during renumbering.

against any person who uses or owns restricted property contrary to the permit. *Numrich*, 242 Wis. 2d 677, ¶ 13. Therefore, barring any other enforceable restrictions enacted by a political subdivision, an owner may construct a wind energy system without a permit or other prior approval. *Id.*, ¶ 15.

¶ 12. In this case, Calumet County enacted an ordinance to restrict wind energy systems pursuant to WIS. STAT. § 66.0401. The County's ordinance divides the systems into two categories, small and large, and a set of uniform, across-the-board restrictions controls each category. These restrictions are based on the County's policy decision that in all situations, wind energy systems must be bound by the same set of restrictions. At oral argument, the County explained that it based the restrictions on its own legislative judgments:

> If you're going to put up a tower that is going to create this much noise, [the County] is saying you can't go above this line. And, if you do, it doesn't necessarily matter whether you're out in a cornfield or whether you're closer into town. That's too much .... [For setbacks,] if you're going to build a tower that's this tall, [the County doesn't] really care whether its in a cornfield near a farmhouse or whether it's closer into town near a school. It can't be so close to a particular building that [the County] laid out in the ordinance.

¶ 13. We need not go into the exact restrictions since the Ecker Brother's objection is a facial objection to the type of regulation the County used, not the substance of the regulations. The Ecker Brothers contend that the local restrictions cannot be the same for *all* systems and cannot be created before the fact without knowledge of the facts of an individual project. Instead, the Ecker Brothers assert that the statutory

scheme allows political subdivisions to restrict systems only on a case-by-case basis through conditional use permits. Thus, this argument boils down to the proper method for restricting wind energy systems: (1) a conditional use permit procedure that restricts systems as needed on a case-by-case basis, or (2) an ordinance creating a permit system with across-the-board regulations based on legislative policy-making.

■■

¶ 14. Conditional use permits provide political subdivisions the flexibility to cope with certain land uses that may create special problems and hazards if located in particular places. *State ex rel. Skelly Oil Co. v. Common Council, City of Delafield*, 58 Wis. 2d 695, 700–01, 207 N.W.2d 585 (1973). They allow a property owner "to put his property to a use which the ordinance expressly permits when certain conditions [or standards] have been met." *Id.* at 701 (citation omitted). As our supreme court explained in *Town of Rhine v. Bizzell*, 2008 WI 76, ¶ 24, 311 Wis. 2d 1, 751 N.W.2d 780:

> [C]onditional use permits are appropriate for "certain uses, considered by the local legislative body to be essential or desirable for the welfare of the community . . ., but not at every or any location . . . or without conditions being imposed . . . ." Thus, those uses subject to a conditional use permit are necessary to the community, but because they often represent uses that may be problematic, their development is best governed more closely rather than as of right. (Citation omitted.)

■

¶ 15. In contrast, across-the-board restrictions, as the name indicates, apply to all uses of a particular type, regardless of the particular location or the specifics of the project. These restrictions therefore require

the governing body to make a policy decision that the regulations are necessary for every system. Legislative and administrative bodies generally make these policy decisions by relying on legislative facts found through the legislative process. *See State v. Flood*, 195 Wis. 2d 515, 531, 536 N.W.2d 458 (Ct. App. 1995). These facts are usually general and have significance broader than the particular dispute before the court. 2 RICHARD J. PIERCE, JR., ADMINISTRATIVE LAW TREATISE § 10.5, at 736 (4th ed. 2002).

¶ 16. At oral argument, Calumet County agreed that its ordinance was the product of legislative facts. The legislative facts it "found" were that the restrictions in its ordinance are always needed to preserve or protect the public health or safety in all situations, do not significantly increase the cost or significantly decrease the efficiency of any wind system at any time, at any place, in any circumstance, or that an alternative system of comparable cost and efficiency will always, *ipso facto,* be available. In other words, the County has decided that its restrictions will never conflict with WIS. STAT. § 66.0401, no matter what system they are applied to. And, in the rare instance that a landowner thinks the ordinance does violate § 66.0401, the County posits that the landowner has the burden of contesting the application of the ordinance based on the facts of that situation.

¶ 17. The County asserts that WIS. STAT. § 66.0401 permits this approach because the legislature delegated the authority to political subdivisions to make policy decisions within the three conditions. And, it contends, so long as the policy decision is related to those conditions, the legislature does not dictate the processes political subdivisions may use to restrict wind energy systems. Taking the County's argument to its fullest,

we interpret this argument as saying that the County may as a matter of local policy disfavor wind energy systems, even severely restrict them, so long as the policy is tied to one of the three conditions in § 66.0401(1). This argument requires us to read the statutes to say that the legislature actually authorized localities to make their own policy regarding alternative energy systems.

¶ 18. We do not buy this argument. Counties have no inherent power to govern. *Milwaukee County v. Milwaukee Dist. Council 48*, 109 Wis. 2d 14, 33, 325 N.W.2d 350 (Ct. App. 1982). Whatever power of local, legislative or administrative power they have is delegated to political subdivisions by the legislature. *See Quinn v. Town of Dodgeville*, 122 Wis. 2d 570, 578, 364 N.W.2d 149 (1985). Administrative powers involve the interpretation or application of law, and require the authority to carry a law into execution or implementation. *See id.* at 579. Powers of an administrative character do not allow political subdivisions to make policy. *Id.* The true difference between powers that are strictly legislative and those that are administrative and merely relate to the execution of the statutory law, "is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution, to be exercised under and in pursuance of the law." *Id.*

¶ 19. Here, the legislature already made the policy decision that it favors wind energy systems. It created a scheme wherein owners of the systems can apply for permits that protect their ability to harness wind. *See* Wis. Stat. § 66.0403. And, it restricted the political subdivisions' ability to contravene this policy. *See* Wis. Stat. § 66.0401(1). However, the legislature did

allow political subdivisions to place restrictions on a wind energy system if, and only if, the restriction "[s]erves to preserve or protect the public health or safety," *or* it "[d]oes not significantly increase the cost of the system or significantly decrease its efficiency," *or* it "[a]llows for an alternative system of comparable cost and efficiency." Sec. 66.0401(1)(a)-(c).

¶ 20. We are unconvinced that just because the legislature provided for three conditions under which political subdivisions can restrict a wind energy system, that it granted political subdivisions the authority to determine *as a matter of legislative fact* a "cart before the horse" method of local control. Instead, the language of Wis. Stat. § 66.0401(1) indicates that political subdivisions must rely on the facts of an individual situation to make case-by-case restrictions. We initially point out that § 66.0401(1) refers to local restrictions placed on *a* wind energy system. The statute's limit on local control does not refer to *any* wind energy system nor to wind energy *systems*.

¶ 21. The focus on the term "*a* system" is also evident from the character of the three conditions, which, though stated in qualitative terms, require political subdivisions to make quantitative determinations. What is needed to protect public health depends on the facts of a particular situation, just as whether a restriction will increase costs, decrease efficiency, or prevent an alternative system from being constructed. When a political subdivision creates restrictions without sufficiently developed facts about *a* particular wind energy system, it is impossible for it to determine if its ordinance is in conflict with the statute. We therefore conclude that Wis. Stat. § 66.0401(1) requires a case-by-case approach, such as a conditional use permit procedure, and does not allow political subdivisions to

66

find legislative facts or make policy. The conditions listed in § 66.0401(1)(a)-(c) are the standards circumscribing the power of political subdivisions, not openings for them to make policy that is contrary to the State's expressed policy.

¶ 22. We find further support for our conclusion in the legislative history of the State's statutory scheme, which *Numrich* explained. The *Numrich* court explained that "[w]hen enacting the original versions of [WIS. STAT. §§ 66.0401 and 66.0403], the legislature expressed concern about the diminishing supplies of nonrenewable energy resources, and it observed that renewable energy systems could address this concern." *Numrich*, 242 Wis. 2d 677, ¶ 18 (citing Laws of 1981, ch. 354, § 1). To encourage the use of renewable sources of energy, the legislature resolved to remove legal impediments to such systems in four ways: (1) codifying the right of individuals to negotiate and establish renewable energy resource easements; (2) clarifying the authority of, and encouraging, political subdivisions to employ existing land use powers for protecting access rights to the wind and sun; (3) creating a procedure for issuing permits to owners and builders of active solar and wind energy systems; and (4) encouraging political subdivisions to grant special exceptions and variances for renewable energy resource systems. *Numrich*, 242 Wis. 2d 677, ¶ 18 (citing Laws of 1981, ch. 354, § 1(2)(b)).

¶ 23. These strategies indicate that the legislature determined it appropriate to give political subdivisions the power to assist in the creation of renewable energy systems and thus become an integral and effective factor in the State's renewable energy goal. But, this history does not indicate that the State intended to delegate the power of *policymaking*. Instead, the evi-

dence is that the State delegated the authority to *execute* and *administer* its established policy of favoring wind energy systems, and the statutory scheme was intended to create avenues for political subdivisions to assist the State. If the County and other similarly situated localities believe that localities should be able to decide for themselves whether and to what extent wind systems are welcome in their geographical area, their argument is best made to the legislature.

¶ 24. Because the legislature did not delegate legislative powers to localities, the County cannot make findings of legislative fact. The County thus exceeded its authority under WIS. STAT. § 66.0401 when it created its wind energy ordinance. We therefore hold the ordinance to be ultra vires. We reverse and remand with directions that the circuit court reconsider the Ecker Brothers' declaratory judgment action given that the ordinance is ultra vires.

*By the Court.*—Judgment reversed and cause remanded with directions