**COURT OF APPEALS
DECISION
DATED AND FILED**

**April 7, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP2199**

STATE OF WISCONSIN

Cir. Ct. No. **2024CV78**

IN COURT OF APPEALS
DISTRICT III

MICHAEL OSTLIE AND JOY OSTLIE,

    PLAINTIFFS-APPELLANTS,

  V.

ST. CROIX COUNTY,

    DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for St. Croix County: SCOTT R. NEEDHAM, Judge. *Affirmed*.

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Michael and Joy Ostlie appeal from a circuit court order granting St. Croix County's motion to dismiss their lawsuit seeking a

declaration of interest in a portion of the Wildwood Trail. The circuit court concluded that the Ostlies had failed to comply with the notice of claim statute, WIS. STAT. § 893.80(1d) (2023-24).[1] For the following reasons, we affirm.

## BACKGROUND

¶2     This lawsuit concerns the rightful owner of the portion (hereinafter, "the disputed portion") of the Wildwood Trail (hereinafter, "the Trail") running through the Ostlies' property.[2] The Trail is a seven-mile recreational trail located in St. Croix County that is open to the public year-round. A portion of the Trail runs through the Ostlies' property, which they have owned since 1996. It is undisputed that the County purchased the property that the Trail is now located on from a railroad company in 1970, and, since 1971, the County has signed, groomed, fenced, maintained, and promoted the Trail, including the disputed portion.

¶3     On May 18, 2022, Dennis Merkel, a community development parks administrator for the County, sent a letter to all property owners "[n]ear" the Trail, including the Ostlies. In the letter, Merkel described the County's ownership and maintenance history of the Trail and discussed the unauthorized use of ATVs on the Trail. The letter further recounted that to prevent the continued unauthorized use of ATVs on the Trail, County staff had begun blocking access points to the

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

[2] Based upon the record, it appears that the disputed portion of the Trail is the entire portion of the Trail that runs through the Ostlies' property.

Trail where the County's "property line fence has been cut and peeled back to make an access" to private property.

¶4     Thereafter, the Ostlies and the County exchanged numerous correspondences regarding the ownership of the disputed portion of the Trail.  The Ostlies stated, through their attorney, in a December 2022 letter to the County that they were "in receipt of the materials you sent on August 2, 2022[,] regarding the County's asserted ownership interest in the" disputed portion of the Trail.  The Ostlies stated that they were not disputing that the County "has been maintaining the Trail for many decades" and that they were not seeking "to interrupt or interfere with the public's use" of the Trail.  That said, the Ostlies objected "to any change in their use of the Trail" that "they have enjoyed since the Trail's creation," and they alleged that they lawfully owned the disputed portion of the Trail.

¶5     According to the Ostlies, the Trail was conveyed to the railroad company in 1883 by the owner of what is now their property on the condition that the Trail be used only for railroad purposes.  The Ostlies alleged that the conveyance dictated that if the Trail were no longer used for railroad purposes, the Trail would "revert to first parties their heirs or assigns."  (Formatting altered.) The Ostlies further claimed that the 1970 conveyance to the County "only transferred whatever rights the [r]ailroad had to" the Trail, subject to the 1883 conveyance.  As successors-in-title to the original grantor, the Ostlies argued that the disputed portion of the Trail was lawfully owned by them pursuant to the conveyance because "railroad use was abandoned" on the Trail once the County purchased it in 1970.

¶6 The communications between the parties also concerned the County's confiscation of the Ostlies' signs—which stated that the Ostlies owned the disputed portion of the Trail—and trail cameras along the disputed portion of the Trail. In a letter to the Ostlies dated August 14, 2023, the County stated that it understood that the Ostlies did not agree "with the position that [the County] owns the Wildwood Trail" but that "placing signs on the Wildwood Trail indicating that citizens cannot walk on the trail and that County staff cannot access the trail is not the proper way to address your concerns." The County also stated that it was willing to meet with the Ostlies to discuss their "concerns."

¶7 One day later, the County sent another letter to the Ostlies addressing the Ostlies' placement of more signs on the disputed portion of the Trail.[3] The County stated that it would not return the signs and that the Ostlies "may commence legal action against the County to seek return of the signs." In addition, the County stated, "If you believe that you own a portion of the Wildwood Trail, the appropriate remedy is to commence legal action against the County to address the issue."

¶8 On September 7, 2023, the Ostlies filed a notice of claim pursuant to WIS. STAT. § 893.80, informing the County that the Ostlies claimed ownership of the disputed portion of the Trail and demanding a return of the signs and trail cameras. After they did not receive a formal response from the County, the

---

[3] The August letters were attached as exhibits to the Ostlies' summons and complaint.

Ostlies brought this declaration of interest action in February 2024.[4] The Ostlies alleged that they are the lawful owners of the disputed portion of the Trail based on their analysis of the Trail's history and their use of the disputed portion "for walks, biking and other outdoor activities normally performed on a trail."

¶9 The County moved to dismiss the lawsuit on the basis that the Ostlies failed to comply with WIS. STAT. § 893.80. The County argued that the Ostlies did not serve the County with a formal notice of injury "[w]ithin 120 days after the happening of the event giving rise to the claim." *See* § 893.80(1d)(a). According to the County, the Ostlies "have known about" the County's decades-long "establishment and maintenance" of the Trail, including the disputed portion, since they purchased their property in 1996. The County argued that the Ostlies' knowledge of the County's ownership of the disputed portion is evidenced by their December 2022 letter. Thus, the County asserted that the happening of the event giving rise to the injury occurred either in 1971 or 1996.

¶10 Likewise, the County asserted that the Ostlies had failed to satisfy WIS. STAT. § 893.80 because the Ostlies could not prove that the County had actual notice of the Ostlies' declaration of interest claim and because the County was prejudiced by the delay or failure to give the requisite formal notice of injury.

---

[4] The Ostlies additionally alleged conversion and civil trespass claims against the County, claiming that the County unlawfully entered the disputed portion of the Trail and confiscated the signs and trail cameras. The circuit court ultimately granted the County's motion to dismiss the Ostlies' claims for conversion and trespass, concluding that the claims were precluded by governmental immunity under WIS. STAT. § 893.80(4). The Ostlies do not challenge this ruling on appeal, and we will not consider these claims further. *See A.O. Smith Corp. v. Allstate Ins.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998) ("[A]n issue raised in the trial court, but not raised on appeal, is deemed abandoned.").

*See* § 893.80(1d)(a). In addition, the County argued that the Ostlies had failed to properly serve the County pursuant to § 893.80(1d)(a).

¶11 In response, the Ostlies argued that the 120-day deadline under the formal notice requirement in WIS. STAT. § 893.80(1d)(a) "does not commence until the parties actually dispute something" and that because "there was no dispute as to ownership" of the disputed portion of the Trail "until recently, the event giving rise certainly did not occur" in 1971. The Ostlies claimed that the happening of the event giving rise to the claim occurred when the County "actually took [the Ostlies'] trail cameras and signage." In the alternative, the Ostlies argued that the County had actual notice of their claim given the communications between the County and the Ostlies prior to September 2023 and that any delay did not prejudice the County.

¶12 The circuit court granted the County's motion to dismiss in a written decision. The court concluded that the Ostlies' September 2023 formal notice was untimely under WIS. STAT. § 893.80 because the County had unquestionably maintained and exerted control over the disputed portion of the Trail since 1971, making the Ostlies' "claim over [50] years late." Moreover, the court rejected the Ostlies' assertion that the event giving rise to the dispute did not occur until 2023 when the County "actually took [their] trail cameras and signage." The court declared that the Ostlies' argument was directly contradicted by their December 2022 letter, in which they stated they did not dispute that the County had been maintaining the Trail "for many decades."

¶13 The circuit court similarly rejected the Ostlies' argument that the County had actual notice of their declaration of interest claim and that any delay in providing notice did not prejudice the County. The court determined that the

County had, at most, "mere knowledge" of the circumstances that may have later given rise to the Ostlies' claim, which is insufficient to constitute actual notice. Likewise, the court concluded that "[p]rejudice can almost certainly be found in the over five decades delay in notice during which [the County] has budgeted, expended resources, and coordinated public services for the maintenance of the Trail." Lastly, the court concluded that the Ostlies failed to properly serve the County pursuant to WIS. STAT. § 893.80(1d)(a).

¶14   The Ostlies now appeal.

## DISCUSSION

¶15   "A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint."[5] ***Data Key Partners v. Permira Advisers LLC***,

---

[5] In deciding the County's motion to dismiss, the circuit court considered the pleadings, the Merkel letter, and the Ostlies' December 2022 letter to the County. The Ostlies had requested that the court either disregard the letters in reaching its decision or convert the County's motion to dismiss into a motion for summary judgment and permit the Ostlies a reasonable opportunity to present all material made pertinent under WIS. STAT. § 802.08. The court determined that it could consider the letters under the incorporation-by-reference doctrine without converting the motion into one for summary judgment. Under that doctrine, the court concluded that the Ostlies failed to dispute that the letters were referenced in their complaint; that the information contained in the letters is central to the timeliness of the Ostlies' lawsuit; and that the Ostlies failed to challenge the authenticity of the letters. *See **Soderlund v. Zibolski***, 2016 WI App 6, ¶37, 366 Wis. 2d 579, 874 N.W.2d 561 (2015).

The Ostlies, for the first time in this lawsuit, contend in their reply brief that the Merkel letter is "entirely hearsay" and cannot be relied upon in assessing the merits of the County's motion to dismiss. (Formatting altered.) To the extent the Ostlies challenge the court's application of the incorporation-by-reference doctrine by claiming that the Merkel letter is hearsay, we conclude that they have forfeited this argument by not raising it in the circuit court. *See **Tatera v. FMC Corp.***, 2010 WI 90, ¶19 n.16, 328 Wis. 2d 320, 786 N.W.2d 810 ("Arguments raised for the first time on appeal are generally deemed forfeited."). Similarly, we will not address the Ostlies' hearsay argument on the merits because they raised it for the first time in their reply brief. *See **A.O. Smith Corp.***, 222 Wis. 2d at 492 ("It is inherently unfair for an appellant to withhold an argument from its main brief and argue it in its reply brief because such conduct would prevent any response from the opposing party.").

2014 WI 86, ¶19, 356 Wis. 2d 665, 849 N.W.2d 693 (citation omitted). On review of a motion to dismiss, an appellate court accepts as true all factual allegations in a complaint. *Id.*, ¶18. "However, legal conclusions asserted in a complaint are not accepted, and legal conclusions are insufficient to withstand a motion to dismiss." *Id.* We independently review a circuit court's decision to dismiss a complaint for failure to state a claim, while benefiting from the court's analysis. *Id.*, ¶17.

¶16 Plaintiffs filing suit against certain government entities and their employees must comply with the notice of claim statute, WIS. STAT. § 893.80(1d). *Yacht Club at Sister Bay Condo. Ass'n v. Village of Sister Bay*, 2019 WI 4, ¶¶19-20, 385 Wis. 2d 158, 922 N.W.2d 95. The notice of claim statute has two notice requirements: notice of injury under § 893.80(1d)(a), and notice of claim under § 893.80(1d)(b). *Yacht Club*, 385 Wis. 2d 158, ¶20. Here, the Ostlies' failure to comply with the notice of injury requirement is dispositive of the § 893.80(1d) issue.

¶17 The notice of injury requirement may be satisfied in one of two ways. First, a plaintiff may provide "formal notice of injury" to the defendant, which requires serving the defendant with "written notice of the *circumstances* of the claim" "[w]ithin 120 days after the happening of the event giving rise to the claim." *Clark v. League of Wis. Muns. Mut. Ins.*, 2021 WI App 21, ¶13, 397 Wis. 2d 220, 959 N.W.2d 648 (quoting WIS. STAT. § 893.80(1d)(a)).

¶18 Second, the notice of injury requirement may be satisfied under the "savings clause" in WIS. STAT. § 893.80(1d)(a). *See Clark*, 397 Wis. 2d 220, ¶14 (citation omitted). The savings clause "allows for substantial compliance, excusing the plaintiff's failure to provide formal notice where: (1) the defendant 'had actual notice of the claim,' and (2) the plaintiff 'shows to the satisfaction of

the court that the delay or failure to give the requisite [formal] notice has not been prejudicial.'" ***Id.*** (alteration in original; quoting § 893.80(1d)(a)). Actual notice must be "'of the *claim*,' rather than of the mere 'circumstances' that may later give rise to a claim." ***Id.*** (quoting § 893.80(1d)(a)). However, "actual notice is not limited to a particular timeframe and may occur outside the 120 days following the injury-causing event." ***Id.***

¶19 "The plaintiff has the burden of proving the giving of notice or actual notice and the nonexistence of prejudice." ***Elkhorn Area Sch. Dist. v. East Troy Cmty. Sch. Dist.***, 110 Wis. 2d 1, 5, 327 N.W.2d 206 (Ct. App. 1982). Whether a plaintiff has satisfied the notice of injury requirement, "either through formal notice or substantial compliance, is ultimately a question of law." ***Clark***, 397 Wis. 2d 220, ¶16.

## I. Formal notice of injury

¶20 The Ostlies assert that the circuit court erred by concluding that they failed to provide a timely formal notice of injury. According to the Ostlies, their September 2023 formal notice was timely because the event giving rise to their claim occurred when the Ostlies' "legal assertion that they owned the Disputed Area contradicted" the County's claimed ownership of the disputed portion "in recent years." (Formatting altered.) They further allege that the event giving rise to their claim occurred when "the County actually took the Ostlies' trail cameras and signage." (Formatting altered.) The Ostlies argue that until the County confiscated their personal property, they had no "reason to believe the Disputed

9

Area was not legally theirs … since no one ever told them to stop maintaining the Disputed Area."[6] (Formatting altered.)

¶21 Conversely, the County claims that the happening of the event giving rise to the Ostlies' declaration of interest claim occurred in 1971 when the County began asserting ownership, maintenance, and control over the Trail. In support of this argument, the County asserts that it is undisputed that the County has been continuously maintaining the Trail, including the disputed portion, since 1971 and that the Ostlies failed to "make any claim that they were previously somehow unable to 'discover' the County's recorded deed or the County's actions that were ongoing during the Ostlies' ownership" of their property.

¶22 We conclude that the happening of the event giving rise to the Ostlies' declaration of interest claim would have occurred when they purchased their property in 1996. At that point, the County "claim[ed] a conflicting interest" over the disputed portion of the Trail, *see* WIS. STAT. § 841.01(1), and the Ostlies either knew of this claimed interest or with reasonable diligence should have discovered the claimed interest.

¶23 The Ostlies conceded in their December 2022 letter that they were "in receipt of the materials you sent on August 2, 2022[,] regarding the County's asserted ownership interest in the" disputed portion of the Trail, that the County

---

[6] The Ostlies also argue that the circuit court erred by concluding that their September 2023 formal notice was "over [50] years late" because the Ostlies did not own their property until 1996. Because we decide this case on other grounds, we need not address whether the 120-day deadline under WIS. STAT. § 893.80(1d)(a) could have started prior to the Ostlies' purchase of their property in such a manner that would make their present claim untimely. *See Barrows v. American Fam. Ins.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

"has been maintaining the Trail for many decades," and that they were not seeking "to interrupt or interfere with the public's use" of the Trail. Moreover, in the Merkel letter, Merkel stated that the County "has signed, groomed, fenced, trimmed trees and brush, replaced culverts, installed surfacing, expanded, and controlled usage, promoted, and maintained the trail" "[s]ince 1971." The Ostlies never disputed Merkel's assertions regarding the County's maintenance and governance of the Trail in their corresponding communications. In other words, the Ostlies acknowledged, both explicitly and implicitly, that the County *has* openly claimed an interest in the Trail, including the disputed portion, through maintenance and operation and recorded deed for over 50 years. Given this concession, the Ostlies knew in 1996, or should have known then, that the County claimed a conflicting interest over the disputed portion of the Trail.

¶24 The Ostlies argue that they did not concede in their December 2022 letter that the County had been maintaining the disputed portion of the Trail for decades. Rather, they argue that they conceded in their December 2022 letter that the County had maintained the "overall Trail" and that there "is a difference between the overall Trail and the" disputed portion. (Formatting altered.) We reject this argument. By its plain language, the December 2022 letter clearly demonstrates that the Ostlies had knowledge of the County's claimed interest in the disputed portion of the Trail since they purchased their property in 1996. The December 2022 letter refers to the "Trail" as being the entire Wildwood Trail and distinguishes the "Trail" from that "portion of the Wildwood Trail that runs through [the Ostlies'] property." As the County contends, the December 2022 letter does not state, for example, that the County had been maintaining the Trail except for the disputed portion.

11

¶25 The Ostlies further contend that "[t]here is no evidence in the record that the County actually performed work on the Disputed Area since 1996, whereas the Ostlies stated they most certainly have, treating it as part of their [p]roperty." Again, however, the Ostlies' December 2022 letter states otherwise wherein they concede that the County "has been maintaining the Trail for many decades."

¶26 We are likewise unconvinced by the Ostlies' argument that the happening of the event giving rise to their claim occurred when the County took possession of their trail cameras and signage. As we have explained, the Ostlies knew, or should have known, of the County's claimed interest in the disputed portion of the Trail in 1996.

¶27 Without citation to legal authority, the Ostlies argue that WIS. STAT. § 893.80(1d)(a) "encompasses all claims brought by the Ostlies," not just their declaration of interest claim. (Formatting altered.) Stated differently, the Ostlies appear to contend that the relevant time period for the happening of the event giving rise to their tort claims applies equally to their declaration of interest claim, even if the happening of the event giving rise to their declaration of interest claim occurred in 1996. Because the Ostlies do not support their argument with any references to legal authority, we will not consider it further. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) ("Arguments unsupported by references to legal authority will not be considered.").

¶28 In short, and based on the allegations in the complaint and the contents of the letters, the event giving rise to the Ostlies' declaration of interest claim would have occurred in 1996 when the Ostlies purchased their property because, at that time, the County was openly claiming a conflicting interest over

the disputed portion of the Trail. The Ostlies have therefore failed to meet their burden of proving the timeliness of their formal notice.[7]

## II. Actual notice

¶29 The Ostlies further contend that the circuit court erred by concluding that they failed to satisfy the savings clause standard because the County had actual notice of their declaration of interest claim given the "constant contact" they had with the County "for over a year concerning the Disputed Area and its ownership position." (Formatting altered.) In particular, the Ostlies claim that their December 2022 letter "and subsequent numerous other communications … certainly put the County on actual notice of the Ostlies' ownership position in the Disputed Property."

¶30 As the County argues, however, "notice of a claimant's 'position' on an issue is not the same *as actual notice of a claim*," which is the requirement the Ostlies had to meet to comply with the savings clause. *See Clark*, 397 Wis. 2d 220, ¶14 (stating that actual notice must be "'of the *claim*,' rather than of the mere 'circumstances' that may later give rise to a claim" (quoting WIS. STAT. § 893.80(1d)(a))). We conclude that the Ostlies failed to provide actual notice of their declaration of interest claim.

¶31 Three cases cited and relied on by the parties guide our analysis. First, in *Clark*, a city employee was injured while working in October 2015.

---

[7] Our conclusion that the Ostlies failed to timely comply with the formal notice of injury requirement would be the same even if, as the Ostlies argue, their December 2022 letter constituted formal notice because, in any event, the 120-day deadline to file the notice would have run by the time they sent the letter.

*See id.*, ¶3.  On the date of the injury, the employee's supervisor completed an "injury form" that detailed the specifics of the employee's injury and the events surrounding it.  *Id.*, ¶4.  Shortly thereafter, a risk management officer investigated the employee's injury by examining the location where the injury occurred and interviewing individuals pertinent to the injury.  *Id.*, ¶6.  The employee filed a notice of claim form with the city in April 2018 and, afterward, a personal injury lawsuit against the city.  *Id.*, ¶¶7-8.

¶32     On appeal, we concluded that the city did not have actual notice of the employee's personal injury claim by virtue of the injury form or the risk management officer's investigation.  *Id.*, ¶21.  We stated that "actual notice must apprise the defendant of the injured party's *claim*" and that the "early communications—focused as they were solely on the cause of [the employee's] injury—did not meet the actual notice requirement."[8]  *Id.*

---

[8] Despite concluding that the city did not have actual notice of the employee's personal injury claim by virtue of the injury form or the risk management officer's investigation, we determined that the city undoubtedly had actual notice of the employee's personal injury claim when, in April 2018, it received the employee's notice of claim form because that form "apprised the City of both [the employee's] injury and her claim for reimbursement for medical expenses." *Clark v. League of Wis. Muns. Mut. Ins.*, 2021 WI App 21, ¶22, 397 Wis. 2d 220, 959 N.W.2d 648.

The Ostlies claim that even if their December 2022 letter did not provide actual notice of their claim to the County, *Clark* dictates that their September 2023 formal, albeit untimely, notice provided the County actual notice of their declaration of interest claim. The County responds by arguing that the September 2023 notice could not have provided actual notice because it was improperly served. We need not reach either of these arguments, however, because the Ostlies did not claim before the circuit court that the September 2023 formal notice, if untimely, nevertheless provided actual notice. *See Schonscheck v. Paccar, Inc.*, 2003 WI App 79, ¶11, 261 Wis. 2d 769, 661 N.W.2d 476 ("A fundamental appellate precept is that we 'will not … blindside trial courts with reversals based on theories which did not originate in their forum.'" (citation omitted)).

¶33    Second, in ***Olsen v. Spooner Township***, 133 Wis. 2d 371, 373, 395 N.W.2d 808 (Ct. App. 1986), a property owner filed a lawsuit against a township three years after the township "alter[ed]" parts of the owner's property while improving a road.  On appeal, we concluded that the property owner had failed to prove that the township had actual notice because "although governmental officials knew of the construction project" and that it would entail altering some of the property owner's property, "they had no actual notice of [the property owner's] claim until [he] filed his inverse condemnation action three years after the improvements' completion." ***Id.*** at 377-78.  This conclusion was true despite the fact that the property owner conversed "with someone at the county highway department about the removal of trees and fences." ***Id.*** at 378.  We stated, "Although governmental officials may have been able to hypothesize from their knowledge of the project that [the property owner] might have a claim for damages, we cannot impute such knowledge from the instant facts." ***Id.***

¶34    Third, in ***Ecker Brothers v. Calumet County***, 2009 WI App 112, ¶2, 321 Wis. 2d 51, 772 N.W.2d 240, farmers sought a grant to build additional wind turbines on their property.  The grant required an acknowledgement letter from Calumet County stating that the farmers did not need a permit to build the wind turbines. ***Id.***  The farmers "repeatedly requested" that the county provide an acknowledgement, but, in response, the county passed a moratorium and ordinance on further wind turbines. ***Id.***, ¶¶2, 9.  Under the new ordinance, the farmers "had to apply for a permit and their proposed wind turbines had to meet the ordinance's restrictions." ***Id.***, ¶2.

¶35    Afterward, the farmers sent multiple letters to the county explaining that they thought the ordinance was unlawful under WIS. STAT. § 66.0401 (2007-08) and that the ordinance's restrictions would make wind projects

15

impossible. *Ecker Bros.*, 321 Wis. 2d 51, ¶8. "At that point, the [farmers] had already installed a test turbine, completed percolation tests, and requested permission to dig test holes." *Id.* The farmers then filed a declaratory judgment action claiming that the county had exceeded its statutory authority by restricting the wind turbines. *Id.*, ¶2. On appeal, this court concluded that the county had actual notice of the farmers' declaratory judgment action, given the farmers' repeated requests to the county for an acknowledgment letter, the farmers' additional letters to the county identifying the specific statute that they believed the county had violated, and the farmers' request for permission to dig test holes. *Id.*, ¶8.

¶36    Like the plaintiffs' discussions held with governmental officials before filing claims in *Clark* and *Olsen*, the Ostlies' December 2022 letter to the County regarding their position with respect to the disputed portion of the Trail did not provide the County with actual notice *of their declaration of interest claim.* As the County argues, the December 2022 letter "contains no indication that the Ostlies were intending or even contemplating a lawsuit against the County," much less asserting a declaration of interest claim over the disputed portion of the Trail. Rather, the letter simply stated the circumstances of the Ostlies' claim to ownership of the disputed portion of the Trail and asked the County if it was interested in further discussions that "would clean up" any perceived issues as to ownership and maintenance of the Trail.

¶37    Stated differently, the December 2022 letter gives no indication that the Ostlies intended to file a declaration of interest claim against the County, which falls short of the actual notice requirement. The fact that the County did not have actual notice of the Ostlies' intent to file a declaration of interest claim is

further demonstrated by the August 14, 2023 letter to the Ostlies. In that letter, the County invited the Ostlies to meet with the County "to discuss your concerns."

¶38 Moreover, the Ostlies' December 2022 letter to the County differs from the communications in *Ecker Brothers*. While the Ostlies provided the County with their historical and legal analysis supporting their belief that they owned the disputed portion of the Trail, the County continued to maintain the disputed portion even after the Ostlies initiated communication regarding ownership. Significantly, the Ostlies' December 2022 letter conceded that the County "has been maintaining the Trail for many decades" and that the Ostlies were not seeking "to interrupt or interfere with the public's use" of the Trail. Although the Ostlies' December 2022 letter and other communications with the County may have permitted the County to "hypothesize" that the Ostlies might file a challenge regarding the ownership of the disputed portion of the Trail in court, "we cannot impute such knowledge from the instant facts," particularly given the Ostlies' statements in the December 2022 letter that they were not seeking to interrupt or interfere with the public's use of the Trail and that they were interested in negotiating an agreement. *See Olsen*, 133 Wis. 2d at 378.

¶39 In sum, we conclude that the Ostlies failed to comply with the formal notice of injury requirement in WIS. STAT. § 893.80(1d)(a) and that the County did not have actual notice of the Ostlies' claimed ownership over the disputed portion of the Trail. Accordingly, we need not determine whether the County was prejudiced by the Ostlies' failure to comply with the notice of injury requirement or whether the Ostlies complied with the notice of claim requirement. *See Barrows v. American Fam. Ins.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013).

17

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.